# Appendix 5

*Pro Se* Motion's for Rehearing

# 73,431

## No.73,431

In the Texas Court of Criminal Appeals at Austin

———————————*———————————

## No.782,657

In the 262nd District Court of Harris County, Texas

———————————*———————————

**FILED IN**
**COURT OF CRIMINAL APPEALS**

NOV 1 6 2001

Troy C. Bennett, Jr., Clerk

CHARLES V. THOMPSON
Appellant

v.

THE STATE OF TEXAS
Appellee

———————————*———————————

## APPELLANTS FIRST MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

———————————*———————————

TO THE HONORABLE COURT OF CRIMINAL APPEAL OF TEXAS:

Appellant CHARLES V. THOMPSON Respectfully submits this motion for leave to file a motion for rehearing, together with this motion for rehearing, moving the Court to reconsider its opinion of October 24, 2001, where this Court affirmed Appellants conviction and vacated Appellants sentence remanding this case back to the trial court for a new punishment hearing, granting in part contentions made in appellants original and supplemental briefs. The Court should grant this Motion for leave to Motion for rehearing this case for the reasons stated in Appellant's Motion for Rehearing.

## MOTION FOR LEAVE

Appellant Charles V. Thompson asks for leave Pro Se to File Appellant's first motion for rehearing.

## STATEMENT OF THE CASE

The appellant was charged with the felony offense of capital murder (T.51). The appellant entered a plea of not guilty to the offense (R.XI-6). After the jury found appellant guilty as charged in the indictment (T.198;R.XIII-62), they made an affirmative finding on the first special issue, (T.208;R.XV-56) and a negative finding on the second special issue (T.212-13;R.XV-58), and the trial court assessed the appellant's punishment at death (T.212-13;R.XV-58).

## CONCLUSION

On each rehearing point of error stated in appellant's first motion for rehearing, appellant respectfully submits that the motion for leave to file for rehearing should be granted and appellant's motion for rehearing should be fully considered and granted.

## APPELLANT'S FIRST MOTION FOR REHEARING

In support of appellant's first motion for rehearing, appellant urges each rehearing point of error below, and the following arguments and authorities. After the Court's consideration of those issues, appellant prays the above cause will be reversed.

## REHEARING POINT OF ERROR NO. 4

On October 24, 2001, the Texas Court of Criminal Appeals violated appellants rights to due process guaranteed him by the 14th Amendment to the U.S. CONST.and T.R.A.P. 47.1,

2.

When in reversing the trial courts judgment, the Court of
Criminal Appeals failed to reverse the guilt/innocence phase
as it did the punishment phase of the trial See (slip opinion
pgs.55-10).

**APPELLANTS OBJECTIONS TO THIS COURTS' MATERIAL MISTATEMENTS**

In this Courts slip opinion at pg. 5, the Court herein
said: [I]n his fourth point of error, appellant claims the
state conducted an interview with him while in custody pending
charges in the instant case, by utilizing an under cover
investigator without notifying his counsel or warning him
of his rights, and then used the statements he made during
that interrogation about his plans to commit another crime,
against him at the punishment phase of the instant capital
murder trial. Appellantssays those statements are erroneously
admitted in violation of his Sixth Amendment Right to Counsel
(RR.XIV- 164-165). Appellant Respectfully suggest in his
objection that the court mistated his complaint in part
where this Court in its slip opinion pg.5, stated "[A]gainst
him at the punishment phase of the capital murder trial."
To the contrary the brief stated the error occured "Throughout"
the Trial "Not Just" the punishment phase. See appellants
brief point of error NO.4, where in the appellant requested
the court remand his case for a new trial or a new punishment
phase hearing at pg.29, and dismiss at pg.36 in conjunction
with the previous mentioned. Although the reviewing court was
partially correct in the error complained of, the court was

3.

incorrect in reflecting the trial court error was only compla
lained of in the punishment context. Appellant hereby objects
for to be accurate said same sentence should be reversed to
read against him at the guilt/innocence phase as well as the
punishment phase of the trial.

### APPELLANTS ARGUMENT UNDER POINT OF ERROR NO. 4

In failing to address appellants point of error NO. 4 in
the proper context or as presented in his original brief the
Court violated his right to due process of law guaranteed him
by the 14th Amendment to the U.S. CONST.and T.R.A.P. 47.1.
See: LIGHT v. STATE 15 S.W. 3d 104 (Cr. App. 2000). The Court
in LIGHT stated [F]ailure by a court of appeals to address a
point of error properly raised by a party requires a remand fo
for consideration of that point of error. Requirement that
the court of appeals address every issue necessary to dispose
of an appeal comprehends addressing alternative arguments as
well as arguments that are more distinct in their topics. at 104.

Appellant respectfully request that T.R.A.P. 47.1 applies
to this reviewing court as well as lower District Appeals
Courts, and further states that for this Court to side step
its statutory duty of addressing the error which was complained
ed about and objected to during to during the guilt/innocence
phase of the trial Constitutes a denial of due process of law.
This court reconized the critical nature of the inadmissable
evidence at pg. 7 of its slip opinion, wherein it stated [A]nd
there is no question that the evidence obtained in the course

4.

of such questioning, incriminating appellant as to his guilt for the capital murder, would be inadmissable in his capital murder trial." In light of the aforementioned appellant wonders how the reviewing Court overlooked at what stage of the trial the inadmissable evidence was introduced. Appellant made this "Stage" at question here known in his original brief at pg.27, wherein the record is quoted. See (RR.VOL.14,pp.168-169). Defense Counsel objected that such evidence be suppressed due to his denial of counsel while in costody and the court denied the objection and admitted the evidence (RR.VOL.14p.169).

In conclusion the appellant respectfully request that the reviewing court grant this rehearing point of error, conduct a harmless error analysis as to the effect the inadmissable evidence had on guilt/innocence phase of the trial pursuant to CHAPMAN v. CALIFORNIA 386 U.S. 18, 87 S.CT. 824, (1967), and upon completion of its analysis reverse and remand for a whole new trial.

## REHEARING POINTS OF ERROR NO. 1 and 2

On October 24, 2001 the Texas Court of Criminal Appeals violated Appellants right to due process guaranteed him by the 14th Amendment to the U.S. CONST. and T.R.A.P. 47.1 and Rule 78 (e) when in affirming the trial courts judgment, this Court failed to reverse the guilt/innocence phase of appellants trial under a proper legal frame work for legal and factual sufficiency reviews. (See slip Op. pgs 3-5).

5.

## APPELLANTS OBJECTIONS TO THIS COURTS' MATERIAL MISTATEMENTS

In this Courts slip Opinion at pages 3,4 and 5, the Court herein Said: [I]n reviewing the legal and factual sufficiency of the evidence this Court looks at all of the evidence in light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. JACKSON v. VIRGINIA 443 U.S. 307 (1979)." This was a correct analysisibut the Court failed to address and apply Ex Parte Elizonde 947 S.W.2d 202,205 (Tex. Crim. App.1997). [W]hen conducting a legal sufficiency of the evidence review, an Appellate Court does "Not weigh the evidence tending to establish guilt against the evidence tending to establish innocence."Nor does the Court seek to assess the credibility of the witness on either side. (The Court) "View[s] the evidence in a manner favorable to the verdict of guilty...no matter how powerfull the exculpatory evidence may seem...or how credible the defense witness may appear."So long as the inculpatory evidence standing alone is enough for rational people to believe in the guilt of the defendant [the Court] simply [does] not care how much credible evidence is on either side." See Id. at 205-206. Under this analysis the appellant respectfully suggest in his objection that the court mistateddthe record from trial (RR.XII- 30- 31) and mistated it, in this Honorable Courts opinion (slip op.pg 4), [A]ppellants medical expert agreedtthat the injury to Hayslip's tongue was life threatining and also agreed that

6.

Hayslip "Probably" would have died without medical interventio
tion." TO The Contrary a careful reading of the trialdrecord
shows that Dr. Radalat did NOT quite go so far as to concede
that the shooting did cause death. He said: "[T]HAT the
gunshot wound, if not treated at all, "Could" be fatal."
(RR.XII- 30-31). Not "Probably" "Would have died without
medical intervention." AS this Court stated in its slip
opinion at pages4. The appellant recognizes the difference
between "COULD" bedfatal, and "PROBABLY would of died without
medical intervention." This is a mistatement of the facts
herein (RR.XII 30-31). Fact is Hayslip did recieve medical
attention, but something went wrong see Dr. Marvin's testimony
(RR.VOL.12,pp.13-14;pp.76-77), where he stated he was being
sued for "Wrongfull Death" FURTHERMORE:

How the causation statue §6.04 (a) was applied to appellan
ants case along with the states efforts to Capitalize and
take advantage of testimony (including some testimony of
Dr. Radalat The defense expert) that Hayslip would have died,
or at least "Could" have died, (again a mistatement of the fac
facts/testimony herein i.e. diference between WOULD and COULD),
as a result of the gunshot wound IF SHE HAD RECIEVED NO MEDICAL
TREATMENT (RR.XII- 29,2243). One question under section §¢6}04(a
(a) is whether applicants conduct, by itself would have
been insufficient to cause death. That question should beke
answered under the asumption that medical aid is unavailable,
such as taking someone to a remote area. Whether or not

7.

applicants conduct alone was sufficient or insufficient to cause death should take into account the "Countervailing" resourses available to the victim in a major City like Houston, Texas, where most wound victims don't die.

Applicant further argues evidence is Factually insufficient to support his conviction. The applicant contends that the verdict was contrary to the weight of the evidence and clearly unjust. The U.S. Supreme Court has held that a "Heightened degree or reliability" is required when the death penalty is involved, due to the uniqueness, severity and finality of the penalty. See LOCKET v. OHIO 438 U.S. 586, 605; 98 S.CT. 2954, 2965; 57 LEEd. 2d 973 (1978). Factual sufficiency review is an obvious and effective way to improve the reliability of the decision." With all due respect to this Honorable Court Applicant contends that under CLEWIS v.STATE 922 S.W. 2d 126, 129)(Tex. Crim. App.1996). [T]he court of appeals will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," Id.,i.e., the verdict is shocking to the conscience, or is clearly biased. Id. at 135.

Appellant contends that it is clearly biased that the appellant was denied access to evidence proving the Negligent Oxygen Starvation of Hayslip,(an act NOT concurrent to appellant ants), because the 3 Doctors and Hermann Hospital are being sued under the Texas Wrongful Death ACT, and are protected by privilage under the law and as stated by Attorney Sam Houston,

8.

the medical parties Attorney representing them in the pending
Civil Litigation for wrongful death of Hayslip (Info. not ▨▨▨▨
available at time of filing direct appeal) A due process error.
Until such date the Wrongful death lawsuit is settled, appell-
ant is barred legally from aproaching those Defendants for the
"Truth of these matters." Furthermore, no evidence was presen-
ted that any action taken in attempting to save Hayslip's life
were clearly sufficient to kill her. On the contrary Trial
counsel tried to investigate See McCullough's testimony
(RR.VOL.13,pp.14-18). Appellant suggest that the reviewing
court has mischaracterized Dr. Radalat's testimony[s] and when
this court stated in its slip opinion pg.4 [O]n the other hand,
even appellants own expert agreed that Hayslip had sustained a
life-threatining injury and would have died if she had not
recieved medical care." This is not a "Factual Element in
dispute" FACT is she did recieve medical care/attention after
waiting some 6 hours (See Brothers testimony Mike Donaghy),
(RR.Vol.11,pp.196-199 and pp.201-203 and pp.247-248). In the
Hospital, while speaking to Doctors, family (RR.vol.12,pp.7),
and investigators with the Harris County Sheriff's department.
The reviewing Court addresses irrelevant and biased views in
applying this to their "fact finding" decision process. The
evidence supports a guilty verdict for murder of Cain, but not
for capital murder under those circumstances, the only real
issue remaining would be a new trial for murder.

9.

**APPELLANTS ARGUMENT UNDER REHEARING POINTS OF ERROR NO.1 & 2**

On October 24, 2001, the Texas Court of Criminal Appeals violated appellants rights to due process guaranteed him by the 14th Amendment to the U.S. CONT. and T.R.A.P. 47.1 and Rule 78 (d);(e), when in affirming the trial courts judgment, the reviewing court failed to reverse the guilt phase using a proper legal frame work for legal and factual sufficiency review[s]. No rational jury could have found appellant guilty of capital murder by murdering more than one person during "The same criminal transaction." Tex. Penal Code Ann.§19.03 (a) (7)(A). Even under principles of concurrent causation Tex. Penal Code §6.04(a) Causation. The applicant maintains that the evidence was insufficient to sustain a conviction for capital murder, in that it failed to show beyond a reasonable doubt that applicant was responsible for the death of Hayslip CONCURRENTLY with the Doctor.

1. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUSTAIN A CONVIC- TION FOR CAPITAL MURDER, SUCH THAT A CONVICTION VIOLATES DUE PROCESS OF LAW.

2. THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SUSTAIN A CONVI- CTION FOR CAPITAL MURDER, SUCH THAT A CONVICTION VIOLATES DUE PROCESS OF LAW AND THE EIGHTH AMENDMENT.

The applicant next maintains that the evidence was legally insufficient to sustain a conviction for capital murder, in that it failed to show beyond a reasonable doubt that the applicant was responsible for the death of Hayslip concurrently.

The applicant contends that the evidence was legally insuffici-
ent, which would require acquittal of capital murder and remand
for a new trial on murder, as well as, factually insufficient,
which would only require a new trial for capital murder. See
TIBBS v. FLORIDA 457 U.S. 31; 102 S.CT. 2211; 72 L.Ed 2d 652
(1982).

(a) Standard of review: For review of the legal sufficien-
cy of evidence in a criminal case, Texas case law has adopted
the standard articulated in JACKSON v. VIRGINIA 443 U.S. 307;
99 S.CT. 2781; 61EE.Edd 2d (1979). By this standard, the
evidence is considered in the light most favorable of the verdic
verdict. Then the court determines whether a rational jury,
viewing the evidence in that manner, could have found that
the State proved all elements of the offense beyond a reason-
able doubt. The evidence favoring a finding of guilt is not
weighed against "Countervailing evidence." Ex Parte ELIZONDQ,
947 S.W. 2d 202,205(Tex. Crim. App.1997). The JACKSON principle
is abstract, but in MALIK v. STATE, 953 S.W.2d 234(Tex.Crim.App
1997). The Court of Criminal Appeals gave specific guidlines
for applying it. The Court Held:

[S]ufficiency of the evidence should be measured by the elemen-
ts of the offense as defined by the hypothetically correct jury
charge for the case. Such a charge would be one that accurately
sets out the law, is authorised by the indictment, does not
unnecessarily increase the State's burden of proof or unnecess-
arily restrict the State's theoriesofreliabilityn and adequat-
ely describes the particular offense for which the defendant
was tried. Id. at 204, As MALIK further noted,"The elements of
the offense are not only principles of law which must be
included. Also logically falling in that catagory is the law on
"CONCURRENT CAUSATION," found in Tex. Penal Code §6.04(a):
11.
11.

A person is criminally responsible if the result would not have occureddbut for his conduct, operating alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

The applicant will return to the application of this principle in subsection below.

Factual sufficiency review is a different story, at least on the surface. The concept of factual sufficiency was recognized as to defensive issue in MERAZ v. STATE, 785 S.W.2d 146 ( (Tex. Crim.App.1990). And applied to the State's burden of proof in CLEWIS v. STATE, 922 S.W.2d 126 (Tex. Crim.App.1996). CLEWIS explained that, "In factual sufficiency review, the reviewing court sets aside the distorting prism of viewing evidence "In light most favorable to the verdict." The evidence favoring the jury's guilty verdict is weighed against counter-vai vailing evidence to determine whether the jury's verdict was "So contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." The Court of Criminal Appeals has severelylimited the concept by dictating deference to juries with regard to the credibility and weight of evidence when there is a conflict. CAIN v. STATE 958 S.W.2d 404,407 (Tex.Crim Crim. App.1997). Since the appellate recognition of a conflict often depends on how finely the evidence is minced on review, the deference principle creates the posibility of Jonah swallowing the whale, so it becomes critical to identify the points on which genuine Factual conflict exist. Evidence contrary to the guilty verdict should not be discounted, in

12.

the name of "Deference," simply because certain other evidence favors the legal conclusion urged by the State, Finally, since the burden of proof is upon the State, uncertainty should be resolved in favor of reversal.

COGNIZABILITY: Legal insufficiency of the evidence is cognizable on review. The answer should be answered affirmatively in a death penalty case,wwhich is all that needs to be decided in the case at bar. While JACKSON v. VIRGINIA, a non-death penalty case, rested soley on due process grounds, a capital murder case involves the additional consideration of the eighth Amendment's ban on cruel ordunusual punishment. (As judge MALONEY'S Dissent in SMITH v. STATE, 898 S.W.2d 838 (Tex. Crim.App.1995) explained, the due process clause & the eighth Amendment frequently overlap in the context of death-penalty cases. The need for factual sufficiency review is just another example of that). The Supreme Court has held that a "Heightened degree of reliability" is required when the death-penalty is involved, due to uniqueness, severity, and finality of the penalty. See LOCKET v. OHIO 438 U.S. 586, 605; 98 S.CT. 2954, 2965; L.Ed. 2d 973 (1978). Factual sufficiency review is an obvious and effective way to improve the reliability of the decesion. While finding that evidence is legally sufficient in a given case may rest in large part on the fiction that, in the eye's of the jury, the State's evidence was 100% believable and persuasive while the defense evidence was 100% unbelievable and weak, factual sufficiency review removes the distorting effecь                    13.

effect of that fiction. Factual sufficiency review is the more realistic approach of the two, for in the real World, there are two sides to every coin.

APPLICATION OF LAW TO FACTS: The key issue in the trial was whether, as alleged, the appellant caused the death of Hayslip. The trial court charged the jury under TEX. PENAL CODE §6.04(a)

AS FOLLOWS: A person is criminally responsible if the result would not have occured but for his conduct, opearating alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

(CR-191). This was a correct application of law, as far as it went, (in terms of satisfying Malik, the charge as a whole was defective for reasons stated in grounds below). But far from complete. The charge was deficient in that three germane definition found in the Penal Code should have been included to aid the jury's understanding of the causation concept. Under TEX. PENAL CODE §1.07(a)(10), the term "Conduct" means "an act or omission and its accompanying mental state." TEX. PENAL CODE §1.07(a)(1) further defines an "Act" as "a bodily movement, whether voluntary or involuntary, and such speach." TEX. PENAL CODE §1.07(a)(34) defines an "ommission" as "failure to act." How the causation statue applied to the applicant's conduct has been vigorously contested at every stage. In discussion at trial and on Direct Appeal, however, first the State tried to take advantage of testimony (including some from a Dr./Defense expert) that Hayslip would have died, or at least[1] could have died, as a result of the gunshot wound IF SHE

14.

HAD RECIEVED NO MEDICAL TREATMENT (RR.XII- 29,243). One question
tion under section §6.04 is whether the applicants conduct,
by itself, would have been insufficient to cause death. That
question should not be answered under asumption that medical
aid is complletely unavailable, unless the actor takes some
steppto make aid unavailable, such as taking someone out to
a remote area and shooting him. Whether or not Defendant's
conduct alone was sufficient or insufficient to cause death
should take into account the countervailing resources available
to the victim. In anmajor urban center like Houston, reasonably
prompt medical aid is available. Most wound victims do not die.

On this point a useful analogy may be drawn to MOSLEY V.
STATE, 983 S.W.2d 249 (Tex. Crim.App. 1998), where the Court
of Criminal Appeals held that victim-impact evidence was
admissible bacause the mitigation issue under TEX. CODE OF CRIM
CRIM. PROC. Art. 37.071 asks whether mitigating evidence is
sufficient. MOSLEY held that countervailing factors, particular
arly victim impact evidence, are relevant to that determinati_n
tion. By similar reasoning when the question before the jury
is whether a defendant's conduct is sufficient to cause death,
the modern reality of available medical countermeasures should
be taken into account. With that in mind, the evidence was
abundant that the gunshot wound was not what caused Hayslip's
death.DDr. Radalat testified on direct examination that the
gunshot wound was not inherently lethal and was survivable. (
(RR XII-233). Whether or not it would have done so if Hayslip

had recieved no medical treatment for it misses the point of what really actually happened. In fact the Doctors were able to treat the gunshot wound sucessfully, and the autopsy report said the wound exhibited noticeable healing by the time Hayslip died (SX-80,pp.2-3)in RR XVI). A second important point is that judicial interpretation of Section §6.04 should treat all words in the statue as having significance, including the word "CONCURRELTLY!" Here the doctors were in fact sucessful in stoping the lethal potential of the gunshot wound, before the bradycardia had its fatal effect. IN OTHER WORDS THE APPLICANTS CONDUCT AND THE DOCTORS' NEGLIGENCE OPERATED SEQUENTIALLY, NOT CONCURRENTLY, so the concurrent cause concept does not properly support a finding of sufficient evidence in this cause. Under a proper legal frame-work for legal sufficiency review, no rational jury could have found that the applicant actually killed Hayslip as well as Cain, even under principles of concurrent causation. The evidence supported a guilty verdict for murder but not for capital murder, which warrants a new trial for murder. The case fora simple reversal and retrial, based on factual insufficiency is even more compelling. The State's case rested on the idea that Hayslip would have died without treatment. Even accepting that to be fact, it is not a fact which directly conflicts with the evidence showing medical malpratice which rendered Hayslip Brain Dead. Therefore there is no basis for deference to the jurys crediblity determination as a way of avoiding the hard decision, their was no evidence

16.

that the gunshot wound alone rendered her brain dead. While the
overwhelming weight of the evidence supports that conclusion,
only be tuning out completely the unplesant facts of medical
malpratice and the familys hard choice in terminating life-
support, could the jury and a reviewing court find the applic-
ant killed Hayslip. While fiction underlying legal sufficiency
review permits that, factual sufficiency review does not.
Under those circumstances the only issue remaining would be
punishment, andsa suitable relief could be granted by ordering
a new punishment phase trial for murder.

### APPELLANTS PRO SE ARGUMENT UNDER REHEARING POINTS OF ERROR

### NUMBER 1,2 and 4.

A    Appellant incorporates herein all of his arguments at pgg
pages 1-17 in his original brief[s].

### PRAYER ON REHEARING

Appellant request this Court to grant rehearing, to
sustain the foregoing points of error, to reverse the District
Court's judgment and to order the appropriate relief.for
whi

NOVEMBER _16_ ,2001.

RESPECTFULLY SUBMITTED
PRO SE BY APPELLANT,

CHARLES V. THOMPSON
TDCJ-ID No: 999306
12002 F.M. 350 South
Livingston, Texas 77351

17.

## VERIFICATION

"I, Charles Victor Thompson #999306 being presently incarcerated in the POLUNSKY UNIT of TEXAS DEPARTMENT OF CRIMINAL JUSTICE - Institutional Division, in Polk County, Texas, verify or certify under penalty of perjury that I read the above and forgoing, **MOTION FOR LEAVE TO FILE MOTION FOR REHEARING and MOTION FOR REHEARING,** know the contents therein, and believe them to be true and correct, pursuant to Title 6 § 132.003 Texas Civil Practices and Remedies Code, and Title 28 U.S.C. § 1746.

Executed on this _16_ day of November, 2001."

_Charles Victor Thompson_

Charles Victor Thompson
TDCJ-ID No: 999306
12002 F.M. 350 South
Livingston, Texas 77351

APPELLANT/APPLICANT PRO SE

18.

## CERTIFICATE OF SERVICE

A true and correct copy of:

1. APPELLANTS MOTION FOR LEAVE TO FILE FOR REHEARING.

2. APPELLANTS MOTION FOR REHEARING.

3. VERIFICATIONS, AND CERTIFICATE OF SERVICE.

has been served upon the following listed parties by deposit-
ing the same, via First Class Mail, enclosed in a prepaid,
properly addressed envelope, in a Post Office or Official
Depository, under the care and custody of the United States
Postal Service, on this the _16_ day of November, 2001.

*Charles Victor Thompson*

Charles Victor Thompson
TDCJ-ID No: 999306
12002 F.M. 350 South
Livingston, Texas 77351

APPELLATE/APPLICANT pro se

The names and addresses of
those served are as follows:

Charles Bacarise
Harris County District Clerk
301 San Jacinto
P.O. BOX 4651
Houston, Texas 77210

State Prosecuting Attorney
P.O. BOX 12405
Austin, Texas 78711

Mr. Troy Bennett, Clerk for the TEXAS COURT OF CRIMINAL APPEALS.
P.O. BOX 12308
CAPITOL STATION
Austin, Texas 78711

# 73,431

## No.73,431

In the Texas Court of Criminal Appeals at Austin

---*---

## No.782,657

In the 262nd District Court of Harris County, Texas

---*---

CHARLES V. THOMPSON
Appellant

v.

THE STATE OF TEXAS
Appellee

---*---

**FILED IN**
COURT OF CRIMINAL APPEALS

NOV 1 6 2001

Troy C. Bennett, Jr., Clerk

## APPELLANTS FIRST MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

---*---

TO THE HONORABLE COURT OF CRIMINAL APPEAL OF TEXAS:

Appellant CHARLES V. THOMPSON Respectfully submits this motion for leave to file a motion for rehearing, together with this motion for rehearing, moving the Court to reconsider its opinion of October 24, 2001, where this Court affirmed Appellants conviction and vacated Appellants senténćeore-manding this case back to the trial court for a new punishment hearing, granting in part contentions made in appellants original and supplemental briefs. The Court should grant this Motion for leave to Motion for rehearing this case for the reasons stated in Appellant's Motion for Rehearing.

### MOTION FOR LEAVE

Appellant Charles V. Thompson asks for leave Pro Se to File Appellant's first motion for rehearing.

## STATEMENT OF THE CASE

The appellant was charged with the felony offense of capital murder (T.51). The appellant entered a plea of not guilty to the offense (R.XI-6). After the jury found appellant guilty as charged in the indictment (T.198;R.XIII-62), they made an affirmative finding on the first special issue, (T.208;R.XV-56) and a negative finding on the second special issue (T.212-13;R.XV-58), and the trial court assessed the appellant's punishment at death (T.212-13;R.XV-58).

## CONCLUSION

On each rehearing point of error stated in appellant's first motion for rehearing, appellant respectfully submits that the motion for leave to file for rehearing should be granted and appellant's motion for rehearing should be fully considered and granted.

## APPELLANT'S FIRST MOTION FOR REHEARING

In support of appellant's first motion for rehearing, appellant urges each rehearing point of error below, and the following arguments and authorities. After the Court's consideration of those issues, appellant prays the above cause will be reversed.

## REHEARING POINT OF ERROR NO. 4

On October 24, 2001, the Texas Court of Criminal Appeals violated appellants rights to due process guaranteed him by the 14th Amendment to the U.S. CONST.and T.R.A.P. 47.1,

2.

When in reversing the trial courts judgment, the Court of Criminal Appeals failed to reverse the guilt/innocence phase as it did the punishment phase of the trial See (slip opinion pgs.55-10).

## APPELLANTS OBJECTIONS TO THIS COURTS' MATERIAL MISTATEMENTS

In this Courts slip opinion at pg. 5, the Court herein said: [I]n his fourth point of error, appellant claims the state conducted an interview with him while in custody pending charges in the instant case, by utilizing an under cover investigator without notifying his counsel or warning him of his rights, and then used the statements he made during that interrogation about his plans to commit another crime, against him at the punishment phase of the instant capital murder trial. Appellantssays those statements are erroneously admitted in violation of his Sixth Amendment Right to Counsel (RR.XIV- 164-165). Appellant Respectfully suggest in his objection that the court mistated his complaint in part where this Court in its slip opinion pg.5, stated "[A]gainst him at the punishment phase of the capital murder trial." To the contrary the brief stated the error occured "Throughout" the Trial "Not Just" the punishment phase. See appellants brief point of error NO.4, where in the appellant requested the court remand his case for a new trial or a new punishment phase hearing at pg.29, and dismiss at pg.36 in conjunction with the previous mentioned. Although the reviewing court was partially correct in the error complained of, the court was

3.

incorrect in reflecting the trial court error was only compla lained of in the punishment context. Appellant hereby objects for to be accurate said same sentence should be reversed to read against him at the guilt/innocence phase as well as the punishment phase of the trial.

### APPELLANTS ARGUMENT UNDER POINT OF ERROR NO. 4

In failing to address appellants point of error NO. 4 in the proper context or as presented in his original brief the Court violated his right to due process of law guaranteed him by the 14th Amendment to the U.S. CONST.and T.R.A.P. 47.1. See: LIGHT v. STATE 15 S.W. 3d 104 (Cr. App. 2000). The Court in LIGHT stated [F]ailure by a court of appeals to address a point of error properly raised by a party requires a remand fo for consideration of that point of error. Requirement that the court of appeals address every issue necessary to dispose of an appeal comprehends addressing alternative arguments as well as arguments that are more distinct in their topics. at 104.

Appellant respectfully request that T.R.A.P. 47.1 applies to this reviewing court as well as lower District Appeals Courts, and further states that for this Court to side step its statutory duty of addressing the error which was complained ed about and objected to during to during the guilt/innocence phase of the trial Constitutes a denial of due process of law. This court reconized the critical nature of the inadmissable evidence at pg. 7 of its slip opinion, wherein it stated [A]nd there is no question that the evidence obtained in the course

4.

of such questioning, incriminating appellant as to his guilt
for the capital murder, would be inadmissable in his capital
murder trial." In light of the aforementioned appellant wonders
how the reviewing Court overlooked at what stage of the trial
the inadmissable evidence was introduced. Appellant made this
"Stage" at question here known in his original brief at pg.27,
wherein the record is quoted. See (RR.VOL.14,pp.168-169).
Defense Counsel objected that such evidence be suppressed due
to his denial of counsel while in costody and the court denied
the objection and admitted the evidence (RR.VOL.14p.169).

In conclusion the appellant respectfully request that the
reviewing court grant this rehearing point of error, conduct a
harmless error analysis as to the effect the inadmissable
evidence had on guilt/innocence phase of the trial pursuant to
CHAPMAN v. CALIFORNIA 386 U.S. 18, 87 S.CT. 824, (1967), and
upon completion of its analysis reverse and remand for a
whole new trial.

## REHEARING POINTS OF ERROR NO. 1 and 2

On October 24, 2001 the Texas Court of Criminal Appeals
violated Appellants right to due process guaranteed him by
the 14th Amendment to the U.S. CONST.and T.R.A.P. 47.1 and
Rule 78 (e) when in affirming the trial courts judgment, this
Court failed to reverse the guilt/innocence phase of appellants
trial under a proper legal frame work for legal and factual
sufficiency reviews. (See slip Op. pgs 3-5).

5.

## APPELLANTS OBJECTIONS TO THIS COURTS' MATERIAL MISTATEMENTS

In this Courts slip Opinion at pages 3,4 and 5, the Court herein Said: [I]n reviewing the legal and factual sufficiency of the evidence this Court looks at all of the evidence in light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. JACKSON v. VIRGINIA 443 U.S. 307 (1979)." This was a correct analysisibut the Court failed to address and apply Ex Parte Elizonde 947 S.W.2d 202,205 (Tex. Crim. App.1997). [W]hen conducting a legal sufficiency of the evidence review, an Appellate Court does "Not weigh the evidence tending to establish guilt against the evidence tending to establish innocence."Nor does the Court seek to assess the credibility of the witness on either side. (The Court) "View[s] the evidence in a manner favorable to the verdict of guilty...no matter how powerfull the exculpatory evidence may seem...or how credible the defense witness may appear."So long as the inculpatory evidence standing alone is enough for rational people to believe in the guilt of the defendant [the Court] simply [does] not care how much credible evidence is on either side." SeeiId. at 205-206. Under this analysis the appellant respectfully suggest in his objection that the court mistateddthe record from trial (RR.XII- 30- 31) and mistated it, in this Honorable Courts opinion (slip op.pg 4), [A]ppellants medical expert agreedtthat the injury to Hayslip's tongue was life threatining and also agreed that

Hayslip "Probably" would have died without medical intervensio tion." TO The Contrary a careful reading of the trialdrecord shows that Dr. Radalat did NOT quite go so far as to concede that the shooting did cause death. He said: "[T]HAT the gunshot wound, if not treated at all, "Could" be fatal." (RR.XII- 30-31). Not "Probably" "Would have died without medical intervention." AS this Court stated in its slip opinion at pages4. The appellant recognizes the difference between "COULD" bedfatal, and "PROBABLY would of died without medical intervention." This is a mistatement of the facts herein (RR.XII 30-31). Fact is Hayslip did recieve medical attention, but something went wrong see Dr. Marvin's testimony (RR.VOL.12,pp.13-14;pp.76-77), where he stated he was being sued for "Wrongfull Death?! FURTHERMORE:

How the causation statue §6.04 (a) was applied to appellan ants case along with the states efforts to Capitalize and take advantage of testimony (including some testimony of Dr. Radalat The defense expert) that Hayslip would have died, or at least "Could" have died, (again a mistatement of the fac facts/testimony herein i.e. diference between WOULD and COULD), as a result of the gunshot wound IF SHE HAD RECIEVED NO MEDICAL TREATMENT (RR.XII- 29?243). One question under section §¢6?04(a (a) is whether applicants conduct, by itself would have been insufficient to cause death. That question should beke answered under the asumption that medical aid is unavailable, such as taking someone to a remote area. Whether or not

7.

applicants conduct alone was sufficient or insufficient to cause death should take into account the "Countervailing" resourses available to the victim in a major City like Houston, Texas, where most wound victims don't die.

Applicant further argues evidence is Factually insufficient to support his conviction. The applicant contends that the verdict was contrary to the weight of the evidence and clearly unjust. The U.S. Supreme Court has held that a "Heightened degree or reliability" is required when the death penalty is involved, due to the uniqueness, severity and finality of the penalty. See LOCKET v. OHIO 438 U.S. 586, 605; 98 S.CT. 2954, 2965; 57 LEEd. 2d 973 (1978). Factual sufficiency review is an obvious and effective way to improve the reliability of the decision." With all due respect to this Honorable Court Applicant contends that under CLEWIS v.STATE 922 S.W. 2d 126, 129)(Tex. Crim. App.1996). [T]he court of appeals will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," Id.,i.e., the verdict is shocking to the conscience, or is clearly biased. Id. at 135.

Appellant contends that it is clearly biased that the appellant was denied access to evidence proving the Negligent Oxygen Starvation of Hayslip,(an act NOT concurrent to appellant ants), because the 3 Doctors and Hermann Hospital are being sued under the Texas Wrongful Death ACT, and are protected by privilage under the law and as stated by Attorney Sam Houston,

8.

the medical parties Attorney representing them in the pending
Civil Litigation for wrongful death of Hayslip (Info. not xxxx
available at time of filing direct appeal) A due process error.
Until such date the Wrongful death lawsuit is settled, appell-
ant is barred legally from aproaching those Defendants for the
"Truth of these matters." Furthermore, no evidence was presen-
ted that any action taken in attempting to save Hayslip's life
were clearly sufficient to kill her. On the contrary Trial
counsel tried to investigate See McCullough's testimony
(RR.VOL.13,pp.14-18). Appellant suggest that the reviewing
court has mischaracterized Dr. Radalat's testimony[s] and when
this court stated in its slip opinion pg.4 [O]n the other hand,
even appellants own expert agreed that Hayslip had sustained a
life-threatining injury and would have died if she had not
recieved medical care." This is not a "Factual Element in
dispute" FACT is she did recieve medical care/attention after
waiting some 6 hours (See Brothers testimony Mike Donaghy),
(RR.Vol.11,pp.196-199 and pp.201-203 and pp.247-248). In  the
Hospital, while speaking to Doctors, family (RR.vol.12,pp.7),
and investigators with the Harris County Sheriff's department.
The reviewing Court addresses irrelevant and biased views in
applying this to their "fact finding" decision process. The
evidence supports a guilty verdict for murder of Cain, but not
for capital murder under those circumstances, the only real
issue remaining would be a new trial for murder.

9.

## APPELLANTS ARGUMENT UNDER REHEARING POINTS OF ERROR NO.1 & 2

On October 24, 2001, the Texas Court of Criminal Appeals violated appellants rights to due process guaranteed him by the 14th Amendment to the U.S. CONT. and T.R.A.P. 47.1 and Rule 78 (d),(e), when in affirming the trial courts judgment, the reviewing court failed to reverse the guilt phase using a proper legal frame work for legal and factual sufficiency review[s]. No rational jury could have found appellant guilty of capital murder by murdering more than one person during "The same criminal transaction." Tex. Penal Code Ann.§19.03 (a) (7)(A). Even under principles of concurrent causation Tex. Penal Code §6.04(a) Causation. The applicant maintains that the evidence was insufficient to sustain a conviction for capital murder, in that it failed to show beyond a reasonable doubt that applicant was responsible for the death of Hayslip CONCURRENTLY with the Doctor.

1. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUSTAIN A CONVIC-
TION FOR CAPITAL MURDER, SUCH THAT A CONVICTION VIOLATES DUE PROCESS OF LAW.

2. THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SUSTAIN A CONVI-
CTION FOR CAPITAL MURDER, SUCH THAT A CONVICTION VIOLATES DUE PROCESS OF LAW AND THE EIGHTH AMENDMENT.

The applicant next maintains that the evidence was legally insufficient to sustain a conviction for capital murder, in that it failed to show beyond a reasonable doubt that the applicant was responsible for the death of Hayslip concurrently.

10.

The applicant contends that the evidence was legally insuffici-
ent, which would require acquittal of capital murder and remand
for a new trial on murder, as well as, factually insufficient,
which would only require a new trial for capital murder. See
TIBBS v. FLORIDA 457 U.S. 31; 102 S.CT. 2211; 72 L.Ed 2d 652
(1982).

(a) Standard of review: For review of the legal sufficien-
cy of evidence in a criminal case, Texas case law has adopted
the standard articulated in JACKSON v. VIRGINIA 443 U.S. 307;
99 S.CT. 2781; 61EL.Edd 2d (1979). By this standard, the
evidence is considered in the light most favorable of the verdic
verdict. Then the court determines whether a rational jury,
viewing the evidence in that manner, could have found that
the State proved all elements of the offense beyond a reason-
able doubt. The evidence favoring a finding of guilt is not
weighed against "Countervailing evidence." Ex Parte ELIZONDO,
947 S.W. 2d 202,205(Tex. Crim. App.1997). The JACKSON principle
is abstract, but in MALIK v. STATE, 953 S.W.2d 234(Tex.Crim.App
1997). The Court of Criminal Appeals gave specific guidlines
for applying it. The Court Held:

[S]ufficiency of the evidence should be measured by the elemen-
ts of the offense as defined by the hypothetically correct jury
charge for the case. Such a charge would be one that accurately
sets out the law, is authorised by the indictment, does not
unnecessarily increase the State's burden of proof or unnecess-
arily restrict the State's theoriesofreliability and adequat-
ely describes the particular offense for which the defendant
was tried. Id. at 204, As MALIK further noted,"The elements of
the offense are not only principles of law which must be
included. Also logically falling in that catagory is the law on
"CONCURRENT CAUSATION," found in Tex. Penal Code §6.04(a):

11.
11.

A person is criminally responsible if the result would not have occureddbut for his conduct, operating alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

The applicant will return to the application of this principle in subsection below.

Factual sufficiency review is a different story, at least on the surface. The concept of factual sufficiency was recognized as to defensive issue in MERAZ v. STATE, 785 S.W.2d 146 ( (Tex. Crim.App.1990). And applied to the State's burden of proof in CLEWIS v. STATE, 922 S.W.2d 126 (Tex. Crim.App.1996). CLEWIS explained that, "In factual sufficiency review, the reviewing court sets aside the distorting prism of viewing evidence "In light most favorable to the verdict." The evidence favoring the jury's guilty verdict is weighed against counter⊽ai vailing evidence to determine whether the jury's verdict was "So contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." The Court of Criminal Appeals has severelylimited the concept by dictating deference to juries with regard to the credibility and weight of evidence when there is a conflict. CAIN v. STATE 958 S.W.2d 404,407 (Tex.Crim Crim. App.1997). Since the appellate recognition of a conflict often depends on how finely the evidence is minced on review, the deference principle creates the posibility of Jonah swallowing the whale, so it becomes critical to identify the points on which genuine Factual conflict exist. Evidence contrary to the guilty verdict should not be discounted, in

12.

the name of "Deference," simply because certain other evidence favors the legal conclusion urged by the State, Finally, since the burden of proof is upon the State, uncertainty should be resolved in favor of reversal.

COGNIZABILITY: Legal insufficiency of the evidence is cognizable on review. The answer should be answered affirmatively in a death penalty case,wwhich is all that needs to be decided in the case at bar. While JACKSON v. VIRGINIA, a non-death penalty case, rested soley on due process grounds, a capital murder case involves the additional consideration of the eighth Amendment's ban on cruel ordunusual punishment. (As judge MALONEY'S Dissent in SMITH v. STATE, 898 S.W.2d 838 (Tex. Crim.App.1995) explained, the due process clause & the eighth Amendment frequently overlap in the context of death-penalty cases. The need for factual sufficiency review is just another example of that). The Supreme Court has held that a "Heightened degree of reliability" is required when the death-penalty is involved, due to uniqueness, severity, and finality of the penalty. See LOCKET v. OHIO 438 U.S. 586, 605; 98 S.CT. 2954, 2965; L.Ed. 2d 973 (1978). Factual sufficiency review is an obvious and effective way to improve the reliability of the decesion. While finding that evidence is legally sufficient in a given case may rest in large part on the fiction that, in the eye's of the jury, the State's evidence was 100% believable and persuasive while the defense evidence was 100% unbelievable and weak, factual sufficiency review removes the distorting effect                    13.

effect of that fiction. Factual sufficiency review is the more realistic approach of the two, for in the real World, there are two sides to every coin.

APPLICATION OF LAW TO FACTS: The key issue in the trial was whether, as alleged, the appellant caused the death of Hayslip. The trial court charged the jury under TEX. PENAL CODE §6.04(a)

AS FOLLOWS: A person is criminally responsible if the result would not have occured but for his conduct, opearating alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

(CR-191). This was a correct application of law, as far as it went, (in terms of satisfying Malik, the charge as a whole was defective for reasons stated in grounds below). But far from complete. The charge was deficient in that three germane definition found in the Penal Code should have been included to aid the jury's understanding of the causation concept. Under TEX. PENAL CODE §1.07(a)(10), the term "Conduct" means "an act or omission and its accompanying mental state." TEX. PENAL CODE §1.07(a)(1) further defines an "Act" as "a bodily movement, whether voluntary or involuntary, and such speach." TEX. PENAL CODE §1.07(a)(34) defines an "ommission" as "failure to act." How the causation statue applied to the applicant's conduct has been vigorously contested at every stage. In discussion at trial and on Direct Appeal, however, first the State tried to take advantage of testimony (including some from a Dr./Defense expert) that Hayslip would have died, or at least could have died, as a result of the gunshot wound IF SHE

14.

HAD RECIEVED NO MEDICAL TREATMENT (RR.XII- 29,243). One question tion under section §6.04 is whether the applicants conduct, by itself, would have been insufficient to cause death. That question should not be answered under asumption that medical aid is complletely unavailable, unless the actor takes some steppto make aid unavailable, such as taking someone out to a remote area and shooting him. Whether or not Defendant's conduct alone was sufficient or insufficient to cause death should take into account the countervailing resources available to the victim. In anmajor urban center like Houston, reasonably prompt medical aid is available. Most wound victims do not die.

On this point a useful analogy may be drawn to MOSLEY V. STATE, 983 S.W.2d 249 (Tex. Crim.App. 1998), where the Court of Criminal Appeals held that victim-impact evidence was admissible bacause the mitigation issue under TEX. CODE OF CRIM CRIM. PROC. Art. 37.071 asks whether mitigating evidence is sufficient. MOSLEY held that countervailing factors, particular arly victim impact evidence, are relevant to that determinasiin tion. By similar reasoning when the question before the jury is whether a defendant's conduct is sufficient to cause death, the modern reality of available medical countermeasures should be taken into account. With that in mind, the evidence was abundant that the gunshot wound was not what caused Hayslip's death.DDr. Radalat testified on direct examination that the gunshot wound was not inherently lethal and was survivable. ( (RR XII-233). Whether or not it would have done so if Hayslip

15.

had recieved no medical treatment for it misses the point of
what really actually happened. In fact the Doctors were able
to treat the gunshot wound sucessfully, and the autopsy report
said the wound exhibited noticeable healing by the time Hayslip
died (SX-80,pp.2-3)in RR XVI). A second important point is that
judicial interpretation of Section §6.04 should treat all words
in the statue as having significance, including the word
"CONCURRELTLY." Here the doctors were in fact sucessful in
stoping the lethal potential of the gunshot wound, before the
bradycardia had its fatal effect. IN OTHER WORDS THE APPLICANTS
CONDUCT AND THE DOCTORS' NEGLIGENCE OPERATED SEQUENTIALLY, NOT
CONCURRENTLY, so the concurrent cause concept does not properly
support a finding of sufficient evidence in this cause. Under
a proper legal frame-work for legal sufficiency review, no
rational jury could have found that the applicant actually
killed Hayslip as well as Cain, even under principles of concur
rrent causation. The evidence supported a guilty verdict for
murder but not for capital murder, which warrants a new trial
for murder. The case fora simple reversal and retrial, based
on factual insufficiency is even more compelling. The State's
case rested on the idea that Hayslip would have died without
treatment. Even accepting that to be fact, it is not a fact
which directly conflicts with the evidence showing medical
malpratice which rendered Hayslip Brain Dead. Therefore there
is no basis for deference to the jurys credibility determination
as a way of avoiding the hard decision, their was no evidence

16.

that the gunshot wound alone rendered her brain dead. While the
overwhelming weight of the evidence supports that conclusion,
only be tuning out completely the unplesant facts of medical
malpratice and the familys hard choice in terminating life-
support, could the jury and a reviewing court find the applic-
ant killed Hayslip. While fiction underlying legal sufficiency
review permits that, factual sufficiency review does not.
Under those circumstances the only issue remaining would be
punishment, andsa suitable relief could be granted by ordering
a new punishment phase trial for murder.

**APPELLANTS PRO SE ARGUMENT UNDER REHEARING POINTS OF ERROR**

**NUMBER 1,2 and 4.**

A    Appellant incorporates herein all of his arguments at pag
pages 1-17 in his original brief[s].

### PRAYER ON REHEARING

Appellant request this Court to grant rehearing, to
sustain the foregoing points of error, to reverse the District
Court's judgment and to order the appropriate relief.for

whi
                                        RESPECTFULLY SUBMITTED
                                        PRO SE BY APPELLANT,

NOVEMBER _16_ ,2001.                    CHARLES V. THOMPSON
                                        TDCJ-ID No: 999306
                                        12002 F.M. 350 South
                                        Livingston, Texas 77351


17.

## VERIFICATION

"I, Charles Victor Thompson #999306 being presently

incarcerated in the POLUNSKY UNIT of TEXAS DEPARTMENT OF

CRIMINAL JUSTICE - Institutional Division, in Polk,County,

Texas, verify or certify under penalty of perjury that I

read the above and forgoing, **MOTION FOR LEAVE TO FILE MOTION**

**FOR REHEARING and MOTION FOR REHEARING,** know the contents

therein, and believe them to be true and correct, pursuant

to Title 6 § 132.003 Texas Civil Practices and Remedies

Code, and Title 28 U.S.C. § 1746.

Executed on this _16_ day of November, 2001."

*Charles Victor Thompson*

Charles Victor Thompson
TDCJ-ID No: 999306
12002 F.M. 350 South
Livingston, Texas 77351

APPELLANT/APPLICANT PRO SE

18.

## CERTIFICATE OF SERVICE

A true and correct copy of:

1. APPELLANTS MOTION FOR LEAVE TO FILE FOR REHEARING.

2. APPELLANTS MOTION FOR REHEARING.

3. VERIFICATIONS, AND CERTIFICATE OF SERVICE.

has been served upon the following listed parties by depositing the same, via First Class Mail, enclosed in a prepaid, properly addressed envelope, in a Post Office or Official Depository, under the care and custody of the United States Postal Service, on this the _16_ day of November, 2001.

*Charles Victor Thompson*

Charles Victor Thompson
TDCJ-ID No: 999306
12002 F.M. 350 South
Livingston, Texas 77351

APPELLATE/APPLICANT pro se

The names and addresses of
those served are as follows:

Charles Bacarise
Harris County District Clerk
301 San Jacinto
P.O. BOX 4651
Houston, Texas 77210

State Prosecuting Attorney
P.O. BOX 12405
Austin, Texas 78711

Mr. Troy Bennett, Clerk for the TEXAS COURT OF CRIMINAL APPEALS.
P.O. BOX 12308
CAPITOL STATION
Austin, Texas 78711

19.