# Appendix 6

State's Proposed Findings Adopted by the State District Court

Cause Number 782657-A & B

| | | |
|---|---|---|
| EX PARTE | § | IN THE 262ND DISTRICT COURT |
| | § | OF |
| CHARLES VICTOR THOMPSON,<br>Applicant | § | HARRIS COUNTY, TEXAS |

### STATE'S PROPOSED FINDINGS OF FACT,
### CONCLUSIONS OF LAW AND ORDER

Having reviewed the applications for writ of habeas corpus in cause nos. 782657-A and 782657-B; Respondent's Original Answers filed in cause nos. 782657-A and 782657-B; the appellate record; and, the affidavits and exhibits filed by the parties, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1.      On April 16, 1999, Charles Victor Thompson, the applicant, was found guilty for the felony offense of capital murder in the 262nd District Court, cause no. 782657. Pursuant to the jury's answers to the special issues, the trial court assessed the applicant's punishment at death by lethal injection (I C.R. at 212).

2.      On October 30, 2000, the applicant filed an initial application for writ of habeas corpus in cause no. 782657-A.

3.      On December 19, 2001, the Court of Criminal Appeals affirmed the applicant's conviction but vacated the sentence and remanded for a new punishment hearing due to the erroneous admission of the applicant's statement concerning plans to commit another crime. *Thompson v. State*, 93 S.W.3d 16 (Tex. Crim. App. 2001).

4.      On October 28, 2005, following a punishment retrial, the trial court again assessed the applicant's punishment at death following the jury's

FILED
Chris Daniel
District Clerk

FEB 2 7 2013

Time _____ 12:57 _____
Harris County, Texas
By _____ Deputy _____

affirmative answer to the first special issue and negative answer to the second special issue (I C.R. 238)[1].

5.      On June 27, 2007, the applicant filed an initial application for writ of habeas corpus in cause no. 782657-B.

6.      On October 31, 2007, the Court of Criminal Appeals affirmed the applicant's conviction and sentence in an unpublished opinion. *Thompson v. State*, AP-73,431, 2007 WL 3208755 (Tex. Crim. App. Oct. 31, 2007)(not designated for publication).

7.      Ellis McCullough and Bettina Richardson represented the applicant at his 1999 capital murder trial. Terry Gaiser and Kyle Johnson represented the applicant at his 2005 punishment retrial.

8.      The Hon. Doug Shaver presided over the applicant's initial trial and retrial on punishment as well as the instant habeas proceedings.

## A-WRIT

### FIRST, SECOND AND THIRD GROUNDS: ARTICLE 11.071

9.      In his first and second grounds for relief, the applicant urges error based on the dual track habeas system, contending that the system violates TEX. CONST. art. 1, § 12 and due process of law as guaranteed by U.S. CONST. amend. XIV and that it is flawed because the system hinders the development of ineffective issues. *Applicant's A-writ at 5 and 8*. In his third ground for relief, the applicant contends that the 1998 version of

---

[1] At punishment, the jury answered the following special issues:

> (1)      Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Charles Victor Thompson, would commit criminal acts of violence that would constitute a continuing threat to society?
> (2)      Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Charles Victor Thompson, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

(I C.R. at 234-5).

Section 4(f) of Article 11.071(4) violates the separation of powers provision because it prohibits the filing of a habeas application after a specified time period. *Applicant's A-writ at 16.*

10.     The applicant timely filed his A-writ habeas application in accordance with the requirements of TEX. CODE CRIM. PROC. art. 11.071.

11.     Based on the applicant's A-writ habeas application, the applicant does not specify or complain that the dual track habeas application system forced him to neglect certain meritorious claims, and the applicant's argument that he would greatly benefit from revelations that might occur in a medical malpractice suit brought by complainant Dennise Hayslip's family is wholly speculative.

12.     The imposition of a time limit for filing an initial application for writ of habeas corpus in capital cases is appropriate, constitutional and does not violate the separation of powers provision. *See also Ex parte Blue*, 230 S.W.3d 151, 155 (Tex. Crim. App. 2007)(holding that Legislature may regulate the right to a writ of habeas corpus, including the ability of a defendant to file multiple habeas applications challenging the same conviction).

13.     The applicant is allowed to present a subsequent application for writ of habeas corpus provided he meets the statutory exceptions. TEX. CODE CRIM. PROC. art. 11.071 §5.

14.     The Court of Criminal Appeals, in *Ex Parte Davis,* 947 S.W.2d 216 (Tex. Crim. App. 1996), held that imposing restrictions on subsequent applications of habeas corpus in capital cases is not unconstitutional.

FOURTH AND FIFTH GROUNDS: SUFFICIENCY OF EVIDENCE

15.     The applicant alleges that the evidence is legally and factually insufficient to sustain the applicant's capital murder conviction, arguing that the State failed to prove beyond a reasonable doubt that the applicant was responsible for the death of

3

complainant Glenda Dennise Hayslip. *Applicant's A-writ at 20.*

16.     The applicant's fourth and fifth grounds for relief constitute challenges to the sufficiency of the evidence, claims that are not cognizable in a post-conviction writ proceeding. *Ex parte Christian*, 760 S.W.2d 659, 660 (Tex. Crim. App. 1988); *Ex parte Brown*, 757 S.W.2d 367, 368 (Tex. Crim. App. 1988); *Ex parte Davila*, 530 S.W.2d 543, 546 (Tex. Crim. App. 1975)(op. on reh'g).

SIXTH AND SEVENTH GROUNDS: CONCURRENT CAUSATION

17.     The applicant contends that, if the evidence was sufficient due to Texas statutory law on concurrent causation, such law is unconstitutional as applied in the instant case because it violates due process and due course of the law under TEX. CONST. art. I and reduces the reliability of a guilt determination in violation of the eighth amendment and TEX. CONST. art. I , § 13; that TEX. PENAL CODE § 6.04 is unconstitutional to the extent that it may have been used to make the evidence in the instant case sufficient to sustain the applicant's conviction; and, that the term "clearly insufficient" in TEX. PENAL CODE § 6.04 creates a burden of proof for defendants. *Applicant's A-writ at 31-32.*

18.     The trial court charged the jury, in pertinent part, that:

> A person commits the offense of capital murder if he intentionally or knowingly causes the death of more than one person during the same criminal transaction.
>
> * * *
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of April, 1998, in Harris County, Texas, the defendant, Charles Victor Thompson, did then and there unlawfully, during the same criminal transaction, intentionally or knowingly cause the death of Darren Cain by shooting Darren Cain with a deadly weapon, namely a firearm, and intentionally or knowingly cause the death of Glenda Dennise Hayslip by shooting Glenda Dennise Hayslip with a deadly weapon, namely a firearm, then you will find the defendant, Charles Victor Thompson, guilty of capital murder as charged in the indictment.
>
> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with

4

another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant clearly insufficient

Therefore if you find from the evidence beyond a reasonable doubt that the death of Glenda Dennise Hayslip would not have occurred but for the defendant's conduct, as charged in the indictment, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant clearly insufficient, you will find the defendant criminally responsible. Unless you so find beyond a reasonable doubt or if you have a reasonable doubt thereof you will find the defendant not criminally responsible and say by your verdict "Not Guilty of Capital Murder"

* * *

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you much acquit the defendant.

(I C.R. at 190-192, 196).

19.     At trial, counsel objected to the trial court's charge on concurrent causation but not on the basis urged in the instant habeas application. *See* TEX. R. APP. P. 33.1(a); *Hughes v. Johnson,* 191 F.3d 607, 614 (5TH Cir. 1999)(holding that defendant's failure to comply with Texas contemporaneous objection rule constituted adequate and independent state-law procedural ground sufficient to bar federal habeas); *Cantu v. State,* 939 S.W.2d 627, 646 (Tex. Crim. App. 1997)(holding lack of contemporaneous objection waived error).

20.     In the instant habeas petition, the applicant fails to assert legal arguments or authorities to support his claim that TEX. PENAL CODE § 6.04 is unconstitutional as it is applied in the instant case and/or that the term "clearly insufficient" in the statute creates a burden of proof for defendants. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997)(failure to cite authority constitutes waiver of the alleged error on appeal).

21.     Additionally, the trial court's charge to the jury tracked the statutory language of TEX. PENAL CODE § 6.04(a), and did not suffer from the same infirmity cited by the Court of Criminal Appeals in *Robbins v. State*, 717 S.W.2d 348, 351-2 (Tex. Crim. App.

1986)(holding that the trial court's charge on concurrent causation in an involuntary manslaughter case reduced the State's burden of proof).

22.    Additionally, the applicant fails to demonstrate egregious harm, pursuant to *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). *Ex parte Smith*, 185 S.W.3d 455, 464 (Tex. Crim. App. 2006)(citing *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985), for proposition that unobjected to jury charge error is subject to *Almanza's* egregious harm standard on habeas).

EIGHTH GROUND: LESSER-INCLUDED OFFENSES

23.    The applicant alleges that, with respect to his criminal conduct directed at complainant Hayslip, the trial court erred in not instructing the jury on the lesser-included offenses of aggravated assault, murder pursuant to TEX. PENAL CODE § 19.02(b)(2), or felony murder under TEX. PENAL CODE § 19.02(b)(3). *Applicant's A-writ at 36-38.*

24.    The evidence at trial established that, before leaving Hayslip's apartment following an initial encounter with Hayslip and Cain, the applicant said "do you want to die, motherfucker"; that the applicant then left Hayslip's apartment to get a gun; that the applicant returned to Hayslip's apartment with a .380 caliber semi-automatic pistol, kicked through the door to Hayslip's apartment, and shot Cain four times; that the applicant said to Hayslip, "I can shoot you too, bitch"; and, that the applicant put his pistol to Hayslip's cheek, firing his weapon so that her dentures blew out of her mouth (XI R.R. at 54-55, 129-132).

25.    Diane Zernia testified for the defense at guilt-innocence that she did not recall telling Debbie French that the applicant had said that he accidentally shot Hayslip while shooting Cain (XIII R.R. at 5).

26.    Debbie French testified for the defense at punishment that Zernia told French that the applicant said that he shot Hayslip when he was shooting at Cain; that the

applicant did not say that he was not shooting at Hayslip; and, that the applicant did not say that he accidentally shot Hayslip (XIII R.R. at 12).

27.    The applicant did not urge an objection to the court's charge at the trial level on the basis that the charge failed to include the lesser-included offense instructions advanced in the instant habeas application. *See* Tex. R. App. P. 33.1(a); *Cantu v. State,* 939 S.W.2d 627, 646 (Tex. Crim. App. 1997)(holding lack of contemporaneous objection waived error in failing to permit defendant or attorney to state plea to indictment in jury's presence).

28.    The applicant's criminal conduct towards complainant Hayslip was committed intentionally and knowingly.   Evidence did not exist in the record that the applicant's shooting of Hayslip was an accident; that the applicant intended only one victim; or that the applicant knew with a reasonable certainty that only one person would die. *Rousseau v. State*, 855 S.W.2d 666, 672-3 (Tex. Crim. App. 1993)(two-pronged test for determining whether defendant is entitled to lesser-included offense instruction).

NINTH THROUGH THIRTEENTH GROUNDS: PUNISHMENT EVIDENCE

29.    In his ninth through thirteenth grounds for relief, the applicant challenges the trial court's admission of extraneous offenses at the punishment phase of the applicant's first capital murder trial and alleges that the trial court erred in not requiring an explicit finding of proof beyond a reasonable doubt on unadjudicated offenses before permitting the State to introduce evidence of the offenses. *Applicant's A-writ at 40 and 46*.

30.    The Court of Criminal Appeals, on direct appeal of the applicant's initial capital murder conviction, granted the applicant a retrial on punishment, and the applicant's case was retried on punishment in 2005; accordingly, the applicant's ninth through thirteenth grounds for relief alleging error at the punishment phase of the applicnat's first trial are moot.

7

FOURTEENTH AND FIFTEENTH GROUNDS:  REPRESENTATION AT TRIAL

31.     The applicant urges several claims challenging the effectiveness of counsel at trial.  *Applicant's A-writ at 56.*

32.     The Court finds credible the affidavit of Ellis McCullough addressing the applicant's ineffective assistance of counsel claims concerning the applicant's initial trial for the instant offense.  *See 2012 affidavit of trial counsel Ellis McCullough.*

33.     Because the Court of Criminal Appeals granted the applicant a retrial on punishment, the applicant's A-writ claims challenging counsel's representation during the punishment phase of the applicant's initial trial are moot.

        *-representation generally*

34.     According to the credible affidavit of trial counsel McCullough, the defense took the following steps to prepare for the applicant's initial capital murder trial:  drafted and filed numerous pretrial motions; thoroughly reviewed the State's file, including the police offense report and supplements; took copious notes from the contents of the State's file; interviewed the applicant's family members; obtained discovery from the State; issued subpoenas and reviewed numerous records regarding the applicant and his victims, including but not limited to autopsy records, complainant Hayslip's hospital, EMT, and Life Flight records, and, Thompson's jail records; had ongoing conversations with the prosecution before and throughout trial; talked to potential witnesses who were willing to speak with the defense; made numerous attempts to interview medical personnel who treated complainant Hayslip; and, had numerous consultations with Thompson prior to trial where counsel discussed the facts of the instant case, the physical evidence, the applicant's background, and potential witnesses.  *See 2012 affidavit of trial counsel Ellis McCullough.*

35.     According to the credible affidavit of counsel McCullough and the trial record, the defense subpoenaed and presented numerous witnesses for the guilt/innocence phase of

8

trial, including but not limited to Debbie French, Will Jordan, Missy Cook, Lynn Ethridge, Mike Donaghy, and Dr. Paul Radelat. *See 2012 affidavit of trial counsel Ellis McCullough.*

36.    The Court finds, based on the trial and habeas records and the Court's personal recollection, that trial counsel's strategy decisions regarding voir dire and the guilt/innocence phase of trial were reasonable, within prevailing professional norms, and made after a thorough investigation of the law and facts relevant to the applicant's case. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)(whether the *Strickland* test has been met is judged by the totality of the representation, and the judicial review of counsel's performance must be highly deferential).

### -voir dire and parole

37.    The applicant alleges that counsel was ineffective during voir dire for failing to effectively voir dire on parole and victim-impact evidence, allowing Harrell Rogers and Maria Blassingame to remain on the jury, and failing to preserve voir dire error with respect to defense challenges for cause. *Applicant's A-writ at 58.*

38.    The trial court granted the applicant's pre-trial motion to voir dire the jury generally about the requirement that a life sentence for capital murder carries a mandatory, minimum period of confinement for forty (40) years and to ask each venireman the following questions:

  i.      Would the minimum length of time a defendant could serve in prison before he could be paroled be something you would want to know in answering the special issues?
  ii.     On which special issue would this be important?
  iii.    How would this 40-year minimum sentence be important to you in answering the special issues?
  iv.     Would you be more likely, or less likely, generally, to view a defendant as a continuing threat to society if you knew he would not be paroled for a minimum of 40 years?

(I C.R. at 82-4).

39.    The majority of the jurors who served during the applicant's initial trial were voir dired on the ramifications of a life sentence.   Regarding juror Barbara Hevalow, the

9

prosecutor advised Hevalow in voir dire that a life sentence meant that the defendant had to serve a minimum of 40 years before he was eligible for parole; Hevalow testified that a minimum of 40 years for a life sentence sounded fair to her and that the knowledge that a life sentence meant that the defendant had to serve a minimum of 40 years before he was eligible for parole might impact Hevalow's decision on how to answer the special issues; and, the defense did not question Hevalow regarding the issue of parole. Regarding jurors Jermaine Smith and Kenneth Thomas, the State informed them that Texas did not have life without parole and life in Texas meant 40 calendar years. The defense did not question Smith or Thomas about parole. During voir dire, the State informed jurors Harrel Rodgers, Mrs. John Ellisor, Ellin Breeden, Suzanne Wright, Devin Yeates, Orlando Olanso, and Kenneth Bauer, that a life sentence meant the defendant would serve a minimum of 40 years before he would be eligible for parole, and the defense did not discuss parole with these jurors (III R.R. at 36-7, 57, 90; IV R.R. at 63; V R.R. at 39-40, 101; VII R.R. at 146; VIII R.R. at 30-31, 70, 90-91).

40.    Venirepersons David Flowers and Maria Blassingame, who served on the applicant's jury, were not advised on the law regarding the meaning of a life sentence in Texas by the court, the State, or the defense during voir dire although both were advised that the applicant could receive the death penalty or a life sentence (VII R.R. at 38-59, 85-102).

41.    In its punishment charge, the trial court instructed the jury that, if the applicant was sentenced to a term of life imprisonment, the applicant would not be eligible for parole until the actual calendar time served equaled forty (40) calendar years, without consideration of good conduct time; that it could not be accurately predicted how the parole law and good conduct time might be applied to the applicant if he received a life sentence; that the application of those laws depended on decisions made by prison and

10

parole authorities; that the jury could consider the existence of parole law and good conduct time; that the jury was not to consider the extent to which good conduct time may be awarded or forfeited by the applicant; and, that the jury was not to consider the manner in which the parole law could be applied to the applicant (I C.R. at 205).

42.      According to the credible affidavit of trial counsel McCullough, counsel does not recall all of the specifics of his thought process during voir dire; counsel's goal was to select jurors that would give the defense the best possible chance at trial, and counsel strategically conducted voir dire, including the use of peremptory strikes, to achieve that goal; and, if an issue such as parole for a life sentence was covered by the State during voir dire, counsel did not rehash that information with veniremembers.   *See 2012 affidavit of trial counsel Ellis McCullough.*

43.      The applicant fails to demonstrate deficient performance, much less harm, with respect to the instant ineffective claim regarding voir dire and parole law because the jurors in the instant case were thoroughly advised of issues relevant to the trial of the instant case.  The applicant does not establish that jurors were unable to understand the relevant legal burdens and distinctions, follow the law and consider the evidence, or be fair to both the applicant and the State.  *See Strickland v. Washington,* 466 U.S. 668, 687-8 (1984)(defendant must prove counsel's deficient performance and that, but for trial counsel's errors, the result would have been different); *Passmore v. State,* 617 S.W.2d 682, 686 (1981) (the fact that counsel might have pursued a different strategy will not support a finding of ineffectiveness of counsel); *see also Ex parte Maldonado,* 688 S.W.2d 114, 116 (Tex. Crim. App. 1985)(burden is on applicant to allege and prove facts which, if true, entitle him to relief).

          *-voir dire and victim-impact evidence*

44.      The applicant alleges that trial counsel failed to effectively voir dire on victim-impact evidence.  *Applicant's A-writ at 62.*

11

45.    The trial court granted the defense's pre-trial motion to voir dire on victim impact

testimony and ask venirepersons the following questions:

> i.    To which special issues do you believe the victim impact
>       testimony would be relevant?
> ii.   How is it relevant to that particular issue?
> iii.  Would you consider this impact testimony in your
>       deliberation on guilt?
> iv.   Would this impact testimony cause you to reduce the
>       State's burden of proof at either guilt or punishment?
>       Could you promise me it would not do so? (T. I – 85-86).

(I C.R. at 85-7).

46.    According to the credible affidavit of trial counsel McCullough, counsel

strategically conducted his portion of voir dire in order to select jurors that would give the

defense the best chance at trial. *See 2012 affidavit of trial counsel Ellis McCullough.*

47.    No victim-impact evidence was admitted at trial; accordingly, the applicant fails to

demonstrate prejudice relative to the instant ineffective claim.

48.    Additionally, the applicant was granted a retrial on punishment. *See Finding of

Fact 3.* Any alleged harm relating to trial counsel's failure to voir dire on victim impact

evidence is moot.

### -voir dire and jurors Harrell Rogers and Maria Blassingame

49.    The applicant alleges that trial counsel was ineffective for allowing Harrell

Rogers, who was then married to an employee of the Harris County District Attorney's

Office and knew prosecutor Vic Wisner, and Maria Blassingame, who had been in

abusive relationships, to remain on the jury. *Applicant's A-writ at 62.*

50.    During the State's voir dire, Rogers testified that he saw prosecutor Vic Wisner in

social situations, in the neighborhood, and at the health club; that Rogers understood the

process in a capital murder trial; that the death penalty was an appropriate punishment

in certain cases; that Rogers would answer the special issues based on the evidence

elicited at trial; that Rogers had not heard from his wife or friends that the Harris County

12

District Attorney's Office sought the death penalty too often; that Rogers thought that the death penalty was a bad idea when he was younger; that Roger's marriage to an employee of the Harris County District Attorney's Office would not affect his decisions regarding the instant case; that Rogers was a competition shooter and owned firearms; that Rogers had experience with semi-automatic weapons; that Rogers had seen experienced people accidentally discharge a firearm; that, by accidental discharge, Rogers meant that someone had accidentally pulled the trigger; that Rogers served on a criminal jury in a juvenile case; that Rogers ranked himself as a six or seven on a scale in which one was the person who would assess the death penalty only in the most extreme circumstances and ten was the person who would assess the death penalty in every circumstance available; and, that Rogers had read about gangs in prison (IV R.R. at 61-9).

51.      On voir dire examination by the defense, Rogers testified that he had taught at the University of Houston since 1975; that his undergraduate and masters degrees were in economics and his doctorate was in political economy; that Rogers thought that the death penalty should be used carefully; that the impression that Rogers had of a capital murder trial was that it was a horrible experience for everyone, including the prosecutors, the defense, and the judge; that Rogers' wife liked some defense attorneys and disliked others; that Rogers did not think that the defense would be more likely to mislead him than the State; that Rogers did not know the extent to which the prison system actually rehabilitated people; that Rogers did not know anyone involved in a physically abusive domestic relationship; that Rogers had colleagues at work who had needed help with drugs or alcohol; that Rogers could find a defendant not guilty of capital murder where the defendant was charged with knowingly and intentionally murdering two people when one of the people died of another cause; that Rogers could consider lesser-included offenses and the applicable range of punishment; that Rogers

13

did not believe that the Harris County District Attorney's Office was infallible; and, that Rogers did not have any medical training (IV R.R. at 71-7).

52.    At the conclusion of voir dire, the State and the defense asserted that they would accept Rogers as a juror (IV R.R. at 77).

53.    Trial counsel McCullough made a reasonable strategic decision not to exercise a peremptory strike on Rogers, and his decision was based on the following considerations; that Rogers was then in the process of getting a divorce from his wife who was a Harris County prosecutor; that counsel did not consider Rogers' relationship with his soon to be ex-wife as significant as it might have been if he was happily married; and, that counsel thought that Rogers would be fair and consider all of the evidence, including the defense evidence, before reaching a verdict. *See Strickland,* 466 U.S. at 689 (holding that defendant must overcome strong presumption that counsel's conduct falls within wide range of reasonable assistance by probability sufficient to undermine confidence in outcome; that, but for counsel's unprofessional errors, results of proceeding would have been different; and, that competency of representation not to be judged by hindsight); *Bridge v. State,* 726 S.W.2d 558, 571 (Tex. Crim. App. 1986)(holding that standard for effective assistance of counsel does not ensure errorless or perfect counsel). *See 2012 affidavit of trial counsel Ellis McCullough.*

54.    During voir dire examination by the State, Blassingame testified that she could serve on a jury where she would have to decide whether a defendant would live or die; that Blassingame was in an abusive first marriage which lasted a year and a half; that the abusive relationship ended when Blassingame went home to her parents, and she did not maintain any contact with her abusive former husband; that the abuse was not drug or alcohol related; that Blassingame initially felt that the abusive relationship was her fault but did not feel that way towards the end of the relationship; that the death penalty was an appropriate punishment depending on the circumstances or facts of the

14

case; that Blassingame did not feel sorry for the applicant because she did not know anything about the facts of his case; that Blassingame's former brother-in-law went to prison for killing someone, but Blassingame was not familiar with the facts of the case; that Blassingame was currently attending school; that Blassingame was the disciplinarian in her family with her children; that Blassingame's children would not say that they could talk Blassingame into anything or that Blassingame would let them get away with anything; and, that there were some people who would not get the help that they needed or that help would not put them in the right direction (VII R.R. at 90-6).

55.     On voir dire by the defense, Blassingame testified that she was involved in an incident with her landlord's boyfriend in which her glasses were broken and she was cut; that Blassingame filed charges on the boyfriend, and he then left her alone; that Blassingame used to date a man who became loud when he was drunk; that Blassingame would not think that the applicant was guilty if he elected not to testify at trial; that, if Blassingame was accused of committing a crime, it would be her lawyer's decision whether it would benefit her case for her to testify; that Blassingame sold chemical valves; that the objective of the criminal justice system would depend on the crime committed; that Blassingame could not say what the objective of the criminal justice system in a murder case should be without knowing the circumstances of the offense; that Blassingame did not believe that everyone who committed capital murder should be executed; that a life sentence would be appropriate for some capital murder offenses; that Blassingame would require proof before she could convict the applicant of capital murder; and, that the applicant would be found not guilty if the State did not prove the offense (VII R.R. at 96-102).

56.     At the conclusion of voir dire, the State and the defense agreed to accept Blassingame as a juror (VII R.R. at 102).

15

57.    Trial counsel McCullough made a reasonable strategic decision to not exercise a peremptory strike on Blassingame based on her voir dire testimony.    Trial counsel considered Blassingame an indecisive individual who might side with the defense in reaching a verdict if she had support from other jurors, and Blassingame seemed more desirable than the potential jurors that followed her.  *See 2012 affidavit of trial counsel Ellis McCullough.*

58.    The voir dire testimony of Rogers and Blassingame establishes that both jurors understood various legal burdens and distinctions, could follow the law, consider the evidence, be fair to both parties, and participate as jurors in the instant capital murder case; accordingly, the applicant fails to establish prejudice relating to the instant ineffective claim.    *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(for ineffective assistance of counsel claims, a defendant must meet the standard established in *Strickland* by showing that "counsel's performance was deficient and that the deficiency prejudiced the defense").

        *-preservation of voir dire error*

59.    The applicant contends that trial counsel failed to preserve voir dire error with respect to defense challenges for cause by exhausting peremptory strikes and requesting additional strikes.  *Applicant's A-writ at 65.*

60.    The record reflects that the defense exercised nine peremptory strikes, and the State exercised one peremptory strike (I C.R. at 169).

61.    According to the credible affidavit of trial counsel McCullough, counsel does not recall all of the specifics of his thought process during voir dire; counsel's goal was to select jurors that would give the defense the best possible chance at trial; and, counsel strategically conducted voir dire, including the use of peremptory strikes, to achieve that goal.  *See 2012 affidavit of trial counsel Ellis McCullough.*

16

-*extraneous offenses at guilt/innocence*

62. Citing the State's direct examination of witness Lisa Gonzalez, the applicant contends that trial counsel was ineffective for permitting evidence of extraneous misconduct to come before the jury during the guilt-innocence phase of trial without objection, arguing that by eliciting testimony that the applicant damaged items and put holes in a wall, the State introduced "six offenses of criminal mischief." *Applicant's A-writ at 65-7.*

63. The following transpired during the State's direct examination of witness Lisa Gonzalez:

| | |
|---|---|
| Q: | At some point after they began dating, did the defendant move into the house that Lisa and you shared? |
| A: | Yes, sir. |
| Q: | About how many months after you met the defendant? |
| A: | A month and a half, maybe. |
| Q: | Once the defendant moved in was there a change in the way he treated Dennise? |
| A: | He was a little more possessive. He would get angry more often. Not more often. What I saw he would get angry. And they would argue and she would leave. |
| Q: | What type things did they argue about? |
| A: | Sometimes it would be money. Sometimes it would be the fact that Dennise knew a lot of people and a lot of them were male. A lot of them were female. But he would want to know where she was every time she was gone. |
| Q: | Did this type of behavior grow more frequent the longer that this defendant would get angry? |
| A: | Yes. |
| Q: | At first – the first few months that he lived at your house, what would he do when he got angry? |
| A: | A—at one point he went out in the garage and threw a lot of things around and broke a couple of things. I mean, nothing expensive. But, you know, he did – that's how he would take his anger out. He kicked our refrigerator and put a dent in it. And then throughout the time that he was there I think there was a total of – |
| [Defense]: | Object to narrative. |
| The Court: | Sustained. |
| [State]: | When the defendant would get angry, would he do anything to the walls? |
| A: | Yes. He put like five holes in the walls. |
| Q: | And you were about to say something else? |
| [Defense]: | Objection, and ask that we approach at this time. |

17

| The Court: | All right. |
|---|---|
| | (Bench discussion) |
| [Defense]: | Judge, I have a motion in limine on file we should take up if we're going to head down the road of extraneous bad acts. We were going to take that up outside the presence of the jury and find out if it was going to be relevant to what we have going on today. |
| [State]: | I'm done with this, Judge. I'll move on. |
| The Court: | Are you done? |
| [State]: | I'm done with that. |
| The Court: | You're done with the extraneous now, until we hear something else. By that I mean could we approach the bench? |
| [State]: | I'm going to get to shaking her and that she observed the black eye. |
| [Defense]: | I like to do that outside the presence of the jury |

(XI R.R. at 190-192).

64.    Outside the presence of the jury, the trial court ruled that the State's proffered evidence that the applicant rarely worked or contributed to the household expenses was admissible. The State then proffered testimony of incidents in which the applicant got mad at Hayslip and shook Hayslip violently; that the applicant then threw Gonzalez to the ground and pulled the phone out of the wall when Gonzalez tried to call the police; that one St. Patrick's Day the applicant became very mad at a club where Hayslip was present; and, that Gonzalez later saw Hayslip with a black eye. The trial court ruled that evidence regarding the shaking episode was admissible, and the State could elicit testimony that Gonzalez observed Hayslip with a black eye (XI R.R. at 192-5).

65.    Article 38.36(a), Texas Code of Criminal Procedure, allows admission of evidence that shows: 1) relevant facts and circumstances surrounding the murder; 2) the previous relationship between the appellant and the deceased; or 3) the condition of the mind of the accused at the time of the offense. *Id.*; *see also Jernigan v. State*, 585 S.W.2d 701, 704 (Tex. Crim. App. 1979).

18

-*jury argument*

66.    The applicant alleges that trial counsel was ineffective for failing to object to the

State's guilt-innocence argument regarding the testimony of defense witness Dr.

Radalat. *Applicant's A-writ at 68.*

67.    Dr. Radalat testified on cross-examination that Hayslip would have died without

medical intervention; that, if someone using a .380 reloaded it during the commission of

the crime, that would say something about that person's intent in committing the crime;

that firing a .380 at a distance of less than two feet into a human being says something

about that person's intent in committing the crime; that the long term conditions of the

gunshot wound sustained by Hayslip without any medical intervention would probably be

fatal; and, that Radalat was not telling the jury that the doctors caused Hayslip's death

(XII R.R. at 250-256).

68.    At guilt-innocence, the State argued the following:

> **Folks, this part of the trial is commonly referred to as argument. I don't think that's an appropriate term, especially in this case since the defense expert about 5:30 yesterday evening admitted the defendant was guilty.** I prefer the term summation. And I'd like to go over a few aspects of the case, a few things in the charge with you (R. XI –21).
>
> * * *
>
> **Few words about Doctor Radalat. If I could though, in some respects, I'm kind of hesitant to criticize him too much because he did finally admit the defendant is guilty.** One of the things I couldn't understand and I guess you could have your own opinion about it. If you and I can both do a job and you criticize the way I do it or I criticize the way you do it, it's probably all right. You can do what I do. You can do what I do. If Doctor Radalat wants to criticize Doctor Shrode or Doctor Moore – he is a pathologist. Maybe he should – and I suggest that's a valid opinion. But he can't do Doctor Marvin's job. He is not qualified to do Doctor Marvin's job. He is not qualified to perform emergency room surgery. He is not a certified trauma car surgeon. He can't do that job. If he showed up in the trauma center at Hermann they would probably arrest him for trespass. But he's got a good gig going. $200 an hour. $1600 a day. $8,000 a week. $400,000 a year for second-guessing people about a job me [sic] can't even do. Give me a break. **But he finally admitted to you that the wounds would be fatal if left**

19

CONCLUS

**untreated. You got causation. The defendant is guilty.** But I think probably the most telling moment in this whole testimony – remember when Ms. Siegler went up to him, showed him causation. He started laughing. It was almost like he was saying, you know, I've twisted them this far. What am I doing here. Of course he is guilty. Seemed to be implied in his laugh, in his demeanor.

(XIII R.R. at 30-31)(emphasis added).

69.     The State's complained of argument at guilt-innocence was proper as a summary of the evidence and/or a reasonable deduction of evidence elicited at trial.  *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000)(counsel can properly summarize the evidence, make reasonable inferences form the evidence, answer argument of opposing counsel, and make a plea for law enforcement during jury argument).

70.     The applicant was not prejudiced by the complained-of arguments; the arguments were not extreme, manifestly improper, violative of a mandatory statute, and did not inject new facts harmful to the applicant into the trial proceedings.  *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)(reversible error in jury argument).

        *-instruction on lesser-included offense*

71.     Consistent with the defense's theory of the case and pursuant to a reasonable trial strategy, instructions on concurrent causation and the lesser-included offense of murder were included in the guilt/innocence charge.

72.     The evidence presented at trial did not support the submission of the lesser-included offense instructions urged in the instant habeas application; accordingly, the applicant was not prejudiced by counsel's failure to request such instructions at trial.  *See Findings of Fact 23 through 28.*

SIXTEENTH AND SEVENTEENTH GROUNDS: APPEAL

73.     In his sixteenth and seventeenth grounds for relief, the applicant incorporates issues presented on direct appeal and alleges that, assuming that any issue presented in the instant habeas petition should have been presented on direct appeal of the instant

20

case, counsel on appeal was ineffective for not raising the issue. *Applicant's A-writ at 86.*

74.     Aside from the point of error giving rise to the applicant's punishment retrial, the applicant does not show any harm or cumulative effect of alleged errors regarding the trial or direct appeal of the instant conviction. *See Finding of Fact 3.*

75.     Further, the applicant does not demonstrate that, but for appellate counsel's alleged errors, the results of the instant proceeding would have been different. *See Ex parte Butler,* 884 S.W.2d 782, 783 (Tex. Crim. App. 1994)(holding *Strickland* standard applies to appellate counsel as well as trial counsel).

**B-WRIT**

FIRST GROUND: LETHAL INJECTION

76.     The applicant alleges that the lethal injection is cruel and unusual, and the propriety of such method of execution can be properly considered pursuant to the applicant's Article 11.071 post-conviction habeas application. *Applicant's B-writ at 4.*

77.     On direct appeal of the instant conviction where the applicant alleged that the method of execution by lethal injection constituted cruel and unusual punishment in violation of the applicant's constitutional rights, the Court of Criminal Appeals overruled the applicant's point of error, stating that the applicant did not raise the claim at trial and that the applicant's claim was not ripe for review on direct appeal. *Thompson,* 2007 WL 3208755, at *6 (citing *Colburn v. State,* 966 S.W.2d 511, 513 (Tex. Crim. App. 1998)(because defendant's execution was not imminent, his claim that death sentence was unconstitutional due to his mental illness was not ripe for review)).

78.     Based on the Court of Criminal Appeals' holding in *Ex parte Alba,* 256 S.W.3d 682, 686 (Tex. Crim. App. 2008), the applicant's claim concerning the constitutionality of the Texas lethal procedure is not cognizable in a post-conviction habeas proceeding.

21

Additionally, the applicant's claim is not ripe because no execution date has been scheduled for the applicant.

79.    Various courts have rejected defendants' attacks on Texas' method of execution. The United States Supreme Court, in *Baze v. Rees,* 553 U.S. 35 (2008), held that Kentucky's lethal injection protocol, which mirrors Texas' prior three-drug cocktail procedure, satisfies the prohibition against cruel and unusual punishment, pursuant to U.S. CONST. amend. VIII.   The Fifth Circuit Court of Appeals, in *Raby v. Livingston,* 600 F.3d 552 (5TH Cir. 2010), affirmed the federal district court's rejection of Texas death row inmate Charles Raby's claim, brought pursuant to 42 U.S.C. § 1983, concerning the constitutionality of the Texas lethal injection procedure.   The Court of Criminal Appeals, in *Sorto v. State,* 173 S.W.3d 469, 490 (Tex. Crim. App. 2005), rejected Texas death row inmate Sorto's complaint that his death sentence violated the United Nations Convention Against Torture, Articles 6 and 14 of the International Covenant on Civil and Political Rights (ICCPR), and the Supremacy Clause of the United States Constitution.

80.    Additionally, the change in the Texas lethal injection protocol from a three-drug cocktail to the administration of one drug does not render the procedure unconstitutional.

SECOND THROUGH FIFTH GROUNDS: DENIAL OF CONTINUANCE

81.    The applicant challenges the trial court's denial of the applicant's request for a continuance, arguing that the court forced the defense to trial before it was ready and deprived the applicant of due process, effective assistance of counsel, and due course of law in violation of the U.S. CONST. amend. VI and XIV and TEX. CONST. art. I § 10 and 19. *Applicant's B-writ at 9.*

82.    Ellis McCullough, who represented the applicant in his initial capital murder trial conducted in 1999, was originally appointed lead counsel in the punishment retrial of the instant case.

22

83.    On January 21, 2005, the trial court appointed Terrence Gaiser to represent the applicant as second chair counsel in the instant retrial on punishment.

84.    On July 25, 2005, the applicant filed a pro se motion asking the trial court to dismiss appointed counsel McCullough because he was not qualified under the Fair Defense Act to proceed as counsel in a capital murder case where the State sought the death penalty (I C.R. at 3; II R.R. at 5).

85.    On September 15, 2005, McCullough was relieved as lead counsel, and the trial court appointed Kyle Johnson as second chair counsel, elevating Gaiser to first chair, and the trial court advised the applicant that Gaiser and Johnson would represent the applicant as lead counsel and second chair counsel in the instant punishment hearing (II R.R. at 6; I C.R. at 136, 249).

86.    On August 4, 2005, trial counsel Gaiser and Johnson filed numerous pretrial motions, including motions relevant to the development of mitigating evidence, and the trial court granted counsels' request for a mitigation specialist, investigator, and toxicology examination (I C.R. at 99-106).

87.    On August 31, 2005, the trial court granted counsel Gaiser's and Johnson's pretrial motions requesting funding for expert assistance in the area of toxicology and psychology, and a motion to permit an examination of the applicant by neuropsychologist Daneen Milam (I C.R. at 113-121).

88.    On September 15, 2005, the trial court granted trial counsels' motions for funds to retain psychologist Carl Gacono and for Gacono to evaluate the applicant at the Harris County Jail (I C.R. at 126-8, 132-4).

89.    Trial counsel Gaiser and Johnson retained investigator Millie Steinle and mitigation specialist Gina Vitale (I C.R. at 191).

90.    On September 29, 2005, trial counsel Gaiser filed a motion for continuance stating that jury selection was scheduled to commence on September 30, 2005; that

23

testimony was set to begin on October 24, 2005; that second chair counsel Kyle Johnson was appointed on September 15, 2005, and had a limited time to prepare for the instant punishment retrial; and, that Gaiser and Johnson required a minimum of an additional ninety days to assimilate the evidence presented during the original trial and investigate potential mitigation evidence (I C.R. at 171-4).

91.     Also, on September 29, 2005, the trial court conducted a hearing on the defense's pretrial motions, including an initial motion for continuance, during which trial counsel Gaiser stated that he was recently elevated to first chair, and Johnson was recently appointed to the applicant's case as second chair counsel and had a limited time to prepare for trial; Gaiser stated that he and Johnson lost time in their offices due to the threat of a hurricane; and, prosecutor Vic Wisner stated that counsel Gaiser had been the de facto lead counsel on the case since his appointment, that Wisner had worked with Gaiser on discovery over the last two months, that Wisner had met with Gaiser and his expert, and, that the State's file had been available to Gaiser and his experts "at length" (I C.R. at 175; II R.R. at 6-9).

92.     The trial court denied the applicant's initial motion for continuance (I C.R. at 175; II R.R. at 6-9).

93.     On October 5, 2005, defense counsel filed a notice naming Dr. Paul Radelet and Carl Gacono, Ph.D., as potential experts to testify during the applicant's capital murder punishment retrial (I C.R. at 186).

94.     On October 24, 2005, trial counsel Gaiser filed a second motion for continuance alleging that testimony in the instant punishment hearing was scheduled to begin on October 24, 2005; that the defense needed a continuance in order to investigate State's witness Robin Rhodes; and, that the defense wanted to investigate whether Rhodes participated in a previous capital murder trial and look for additional impeachment evidence regarding Rhodes (I C.R. at 209-214).

24

95.     The trial court denied the defense's second motion for continuance (I C.R. at 209-214).

-expert testimony

96.     Dr. Daneen Milam, a neuropsychologist, testified for the defense at punishment that she conducted an evaluation of the applicant and reviewed the applicant's records, including his psychological and psychiatric, school, and juvenile records, and other information gathered by the defense's mitigation expert; that Milam administered tests to the applicant, including an IQ test and the Halstead-Reitan Battery which is widely accepted as the standard for measuring brain integrity; and, that Milam concluded, based on her testing, that the applicant was brain damaged with "diffuse and mild" damage, meaning that everything was affected but the applicant was able to function (XIX R.R. at 41-59).

97.     Additionally, Dr. Milam testified that the alleged physical injury to the applicant's brain may or may not be seen on a CAT scan, and "shearing and that sort of thing doesn't show up on an MRI" (XIX R.R. at 71-2).

98.     On cross-examination of Dr. Milam, the prosecutor did not challenge the validity of the Halstead-Reitan Battery but rather emphasized the lack of physical testing to support Dr. Milam's conclusions

99.     The applicant's assertions of prejudice, due to the trial court's denial of the defense's motions for continuance, are speculative. See Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 787 (2011)(under Strickland's prejudice prong, the likelihood of different result must be substantial). The applicant's habeas assertions that defense counsel might have been able to call an expert, such as Dr. Reitan, the developer of the Halstead-Reitan Battery, to shore up Milam's testimony and/or present documentary evidence regarding the validity of the Halstead-Reitan Battery, are purely speculative. See King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)(defendant complaining

25

about counsel's failure to call witnesses must show proof that witnesses were available and that their testimony would have benefited the defense).

100.    The applicant's claim that trial counsel could have shored up Dr. Milam's testimony with documentary evidence of the validity of the Halstead-Reitan Battery fails because Dr. Milam had already provided trial counsel with documentary evidence concerning the Halstead-Reitan Battery (XIX R.R. at 48). *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979)(reviewing courts will not second-guess through hindsight the strategy of counsel at trial).

101.    Based on Dr. Milam's trial testimony concerning the futility of obtaining a MRI or CAT scan to support her diagnosis of the applicant's alleged brain damage, the applicant fails to demonstrate prejudice regarding his assertion that the trial court's denial of the defense's motion for continuance prejudiced counsels' ability to present physical evidence of the applicant's alleged brain damage (XIX R.R. at 48, 71-2).

102.    The following indicates that trial counsel investigated the potential benefit of presenting other experts during the instant retrial:  the defense presented Dr. Katherine McQueen, M.D., who testified regarding the applicant's alcohol and drug dependencies and their effects on his life; the defense's October 5, 2005 notice of potential experts suggests that counsel considered presenting two additional medical experts, Dr. Paul Radelet and Carl Gacono, Ph.D.; and, the defense obtained funds to retain psychologist Carl Gacono and for Gacono to evaluate the applicant at the Harris County Jail (I C.R. at 126-8, 132-4, 186).

        *-cross-examination of Robin Rhodes*

103.    Robin Rhodes testified for the State at punishment that the applicant made a deal with him to arrange for certain individuals to "go away" and not be present to testify in the applicant's retrial (XVII R.R. at 136-141).

26

104.    Trial counsel effectively cross-examined Rhodes, impeaching his credibility, eliciting testimony regarding his work as an informant for law enforcement, and suggesting that Rhodes' testimony in the instant trial was a product of Rhodes' desire to help himself.   Trial counsel elicited testimony that Rhodes had a prior conviction for aggravated robbery that he neglected to mention during his direct examination; that Rhodes had done a lot of work for law enforcement and received pay for that work; that Rhodes was not looking for a way to gain favor with law enforcement authorities when he was in jail with the applicant but Rhodes would not overlook it "if it was dumped in [his] lap"; that Rhodes was a full-time informant for the Harris County Organized Crime Task Force in 1998 and 1999 and testified in two trials; and, that Rhodes was paid for his participation in the Benavidez trial even though the record from that trial reflected that Rhodes denied receiving payment (XVII R.R. at 148, 152-4; XXII R.R. at 153-8).

105.    The applicant fails to demonstrate that the trial court's denial of a continuance prejudiced him with respect to Rhodes' cross-examination:  the applicant concedes that counsel did not do a bad job impeaching Rhodes, and the applicant does not allege the specific information that could have been garnered had trial counsel obtained additional time to prepare for Rhodes' cross-examination. *Applicant's writ at 13, n. 3.*

106.    The applicant does not demonstrate prejudice with respect to trial counsels' development and presentation of mitigating evidence as the applicant's assertions regarding the alleged beneficial testimony that should have been presented are purely speculative.  *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997)(defendant cannot prevail on his ineffective assistance of counsel claim without proving either deficient performance or actual prejudice).

27

SIXTH GROUND:  YOUTHFUL MISCONDUCT EVIDENCE

107.    The applicant alleges that the State's presentation of evidence of the applicant's youthful misconduct at the punishment phase of trial violated U.S. CONST. amend. VIII. *Applicant's B-writ at 38.*

108.    The applicant urged several motions to preclude the State from offering evidence of extraneous offenses during the instant retrial; however, the applicant failed to object to the State's offer of evidence on the basis now urged (I C.R. at 70, 143, 194).

109.    The applicant was assessed the death penalty for a charged offense that occurred when the applicant was older than eighteen years old.

110.    The introduction of capital punishment evidence is governed by TEX. CODE CRIM. PROC. art. 37.071 and includes any matter the trial court deems relevant to sentencing, including evidence of the defendant's background or character.  TEX. CODE CRIM. PROC. art. 37.071, § 2(a)(1).

111.    The Court of Criminal Appeals, in *Corwin v. State,* 870 S.W.2d 23, 36 (Tex. Crim. App. 1993), rejected a capital defendant's claim that admission at punishment of his juvenile misconduct violated his rights under U.S. CONST. amend. VIII.

112.    While not recognized as authority under TEX. R. APP. P. 77.3, the Court of Criminal Appeals in *Matthews v. State,* No. AP-74,936, 2006 WL 1752169, at *7-8 (Tex. Crim. App. June 28, 2006)(not designated for publication), rejected an adult capital defendant's attempt to analogize his situation to the holding in *Roper v. Simmons,* 543 U.S. 551 (2005), where the United States Supreme Court held that it was unconstitutional to execute defendants who were under the age of eighteen at the time of their capital offense, and to extend the holding in *Simmons* to prevent the admission of youthful misconduct in adult capital defendants' trials.

28

113.    The special issues submitted to the applicant's jury enabled the jury to consider and give full effect to the applicant's lack of maturity, if any, when he committed his prior acts of juvenile misconduct.

SEVENTH GROUND:  BURDEN OF PROOF

114.    The applicant contends that the trial court erred in failing to instruct the jury that the State had the burden of proof beyond a reasonable doubt on the mitigation issue at punishment; accordingly, the applicant alleges that he was denied due process of law pursuant to U.S. CONST. amend. XIV.  *Applicant's B-writ at 42.*

115.    On September 29, 2005, the trial court denied the applicant's pretrial motion to declare Texas' capital sentencing scheme unconstitutional alleging, in part, that the mitigation special issue was unconstitutional because it failed to place a burden of proof on the State (I C.R. at 35-44; II R.R. at 25-6).

116.    Additionally, the trial court denied the applicant's motion to find Article 37.071 unconstitutional on the burden of proof in which the applicant relied on *Apprendi v. New Jersey*, 530 U.S. 466 (2000)(I C.R. at 63-5; II R.R. at 9-10).

117.    The trial court overruled the applicant's objection to the punishment charge, urged in part on the basis that it failed to assign the burden of proof to the State on mitigation (I C.R. at 217-224; XIX R.R. at 97-100).

118.    The applicant did not raise the instant ground for relief on direct appeal of the instant conviction.    *Jones v. Barnes,* 463 U.S. 745 (1983)(appellate counsel not ineffective for choosing not to advance meritless claim and has no constitutional duty to raise every non-frivolous issue)

119.    The Court of Criminal Appeals has rejected claims that the mitigation special issue is infirm as a matter of federal constitutional law because of its lack of a burden of proof; that that the mitigation special issue violates U.S. CONST. amend. VIII because it prevents meaningful appellate review of the jury's determination; and, that *Apprendi v.*

29

*New Jersey,* 530 U.S. 466 (2000), *Ring v. Arizona,* 536 U.S. 584 (2002), and *Blakely v. Washington,* 542 U.S. 296 (2004), require a burden of proof regarding the mitigation special issue. *Roberts v. State,* 220 S.W.3d 521, 534 (Tex. Crim. App. 2007)(citing *Perry v. State,* 158 S.W.3d 438, 446-8 (Tex. Crim. App. 2004)); *Hankins v. State,* 132 S.W.3d 380, 386 (Tex. Crim. App. 2004); *Blue v. State,* 125 S.W.3d 491, 501 (Tex. Crim. App. 2003); *Howard v. State,* 941 S.W.2d 102, 119 (Tex. Crim. App. 1996).

120.    The statutory mitigation instruction included in the court's punishment charge gave the applicant's jury a vehicle with which it could consider and give meaningful effect to the applicant's mitigating evidence.

EIGHTH GROUND:  BURDEN OF PROOF ON MITIGATION

121.    The applicant challenges the trial court's instructions to the jury regarding the burden of proof on the mitigation issue, alleging that the instructions gave the jury mixed signals as to the application of the mitigation issue.  The applicant alleges that such error was in violation of U.S. CONST. amend. VIII pursuant to the United States Supreme Court's decision in *Penry v. Johnson* ("*Penry II*"), 532 U.S. 782 (2001).  *Applicant's B-writ at 54.*

122.    The instant capital murder occurred in 1997, and the trial court submitted the statutory mitigation instruction to the applicant's jury, pursuant to TEX. CODE CRIM. PROC. art. 37.071, that provides for the submission of a future dangerousness special issue and the submission of a mitigation instruction in offenses committed after September 1, 1991, the effective date of the mitigation instruction amendment (XXIV R.R. at 144-45).

123.    The applicant did not object to the court's punishment charge on the basis now urged in the instant habeas petition.

124.    The nullification instruction, devised after the 1989 decision in *Penry v. Lynaugh,* 492 U.S. 223 (1989)(*Penry I*), and given in some cases prior to the 1991 legislative

30

enactment of a mitigation instruction, was not given in the applicant's case and any caselaw concerning such instruction is inapplicable to the applicant's case.

125. The Court of Criminal Appeals has rejected the applicant's ground for relief concerning the alleged inadequacy of the mitigation special issue on the basis of the "mixed signals" analysis of *Penry II*. *Woods v. State*, 152 S.W.3d 105 (Tex. Crim. App. 2004); *Scheanette v. State*, 144 S.W.3d 503, 506 (Tex. Crim. App. 2004); *Escamilla v. State*, 143 S.W.3d 814, 827 (Tex. Crim. App. 2004); *Jones v. State*, 119 S.W.3d 766, 790 (Tex. Crim. App. 2003).

NINTH, TENTH AND ELEVENTH GROUNDS: COURT'S CHARGE

126. The applicant contends that the jury charge affirmatively misled the jury regarding the numerical requirements for answers to the special issues which would lead to a life sentence in violation of U.S. CONST. amend. VI, and that the jury charge misled the jury regarding the numerical requirements for a negative answer to the special issues that would lead to life imprisonment in violation of U.S. CONST. amend. VIII and XIV. *Applicant's B-writ at 57*.

127. On August 4, 2005, the applicant filed a pretrial motion to declare Texas' capital sentencing scheme unconstitutional alleging, in part, that Texas' capital sentencing scheme was unconstitutional because the jury was not informed that a single holdout juror on any special issue would result in an automatic life sentence. The trial court denied the motion on September 29, 2005 (I C.R. at 35-44; II R.R. at 25-6).

128. The trial court overruled the applicant's written objections to the trial court's punishment charge urged pursuant to U.S. CONST. amend. V, VI, VIII, and XIV, alleging, in part, error due to the trial court's failure to inform the jury of the effect of their failure to agree to an answer on the special issues (I C.R. at 222-3; XIX R.R. at 97-100).

129. The trial court submitted to the jury a proper punishment charge in accordance with TEX. CODE CRIM. PROC. art. 37.071. *Sorto v. State*, 173 S.W.3d 469, 492 (Tex.

31

Crim. App. 2005)(capital murder defendant was not entitled to have jurors informed of the effect of their failure to agree on future dangerousness special issue); *Druery v. State*, 225 S.W.3d 491, 509 (Tex. Crim. App. 2007)(rule prohibiting the trial judge, the State, the defendant, or defense counsel from informing the jury that a failure of the jury to agree on a special issue would result in a life sentence rather than a death sentence upheld); *Blue v. State*, 125 S.W.3d 491,505 (Tex. Crim. App. 2003)(claim that Article 37.071 violates various federal constitutional provisions because it prohibits informing jurors of the effect of the failure to agree on the special issues overruled).

130.   The Court of Criminal Appeals has consistently upheld as constitutional the instructions in article 37.071, sections 2(d) and 2(f), known as the "10-12" rule, stating that the "10-12" rule does not violate *Caldwell v. Mississippi*, 472 U.S. 320 (1985). *Prystash v. State*, 3 S.W.3d 522, 536-7 (Tex. Crim. App. 1999)(citations omitted).

131.   The Court's charge at punishment did not mislead the jury regarding the consequence of their deliberations in light of the following instructions:

> You may not answer Special Issue No. 1 "Yes" unless you agree unanimously.
> You may not answer Special Issue No. 1 "No" unless ten (10) or more jurors agree.
> Members of the jury need not agree on what particular evidence supports a negative answer to Special Issue No. 1.
>
> ***
>
> You are instructed that if you return an affirmative finding, that is a "Yes" answer, to Special Issue No. 1, and only then, are you to answer Special Issue No. 2.
> You are instructed that in answering special Issue No. 2, you shall answer the issue "Yes" or "No."
> You may not answer Special Issue No. 2 "No" unless you agree unanimously, and you may not answer Special Issue No. 2 "Yes" unless ten (10) or more of you agree to do so.

(I C.R. at 229).

32

TWELFTH GROUND: EFFECTIVENESS OF APPELLATE COUNSEL

132.    The applicant contends that, if any of the instant habeas grounds for relief should have been raised on direct appeal but were not, then the applicant was denied the effective assistance of counsel on direct appeal. *Applicant's B-writ at 61*.

133.    The applicant fails to establish that he is entitled to relief based on the grounds for relief urged in the instant habeas application. The applicant fails to show that, but for appellate counsel not presenting such claims on direct appeal, the results of the instant proceeding would have been different. *See Ex parte Butler,* 884 S.W.2d 782, 783 (Tex. Crim. App. 1994)(*Strickland* standard applies to appellate counsel as well as trial counsel).

THIRTEENTH AND FOURTEENTH GROUNDS: INCORPORATION OF PRIOR GROUNDS

134.    The applicant incorporates by reference the points of error urged on direct appeal and the grounds for relief raised in the applicant's first post-conviction habeas application. *Applicant's B-writ at 63*.

135.    Other than the basis for which the applicant was granted a punishment retrial, the applicant fails to establish error in his conviction or sentence based on claims urged on direct appeal or post-conviction habeas proceedings.

33

## CONCLUSIONS OF LAW

### A-WRIT

<u>FIRST, SECOND AND THIRD GROUNDS - ARTICLE 11.071</u>

1.      TEX. CODE CRIM. PROC. art. 11.071 is constitutional; the applicant fails to show

that the dual-track system of art. 11.071 is unconstitutional.  *See Ex parte Davis,* 947

S.W.2d 216 (Tex. Crim. App. 1996)(holding that art. 11.071 does not violate separation

of powers doctrine or open-court provision and does not deny equal protection and due

process).  The applicant fails to show that the provisions and requirements of TEX. CODE

CRIM. PROC. art. 11.071 prevented him from advancing meritorious habeas claims or

that the statute is unconstitutional as applied.  *Cf. Cantu v. State,* 939 S.W.2d 627, 644

(Tex. Crim. App. 1997)(holding that reviewing court views statute as applied in

determining constitutionality); *see also Ex parte Smith,* 977 S.W.2d 610, 611 (Tex. Crim.

App. 1998)(noting that art. 11.071 contains exclusive procedures for exercise of Court of

Criminal Appeals' original jurisdiction in death penalty cases)(citing *Davis,* 947 S.W.2d at

221-23).

<u>FOURTH AND FIFTH GROUNDS:  SUFFICIENCY OF EVIDENCE</u>

2.      The applicant's fourth and fifth grounds for relief are essentially attacks on the

sufficiency of the evidence to support his conviction which are not cognizable claims

during habeas proceedings.  *Ex parte Williams*, 703 S.W.2d 674, 679 (Tex. Crim. App.

1986).

<u>SIXTH AND SEVENTH GROUNDS:  CONCURRENT CAUSATION</u>

3.      The applicant did not object to the trial court's charge on the basis now urged in

the instant habeas petition; accordingly, the applicant is procedurally barred from

advancing the instant claims.  *Hodge v. State*, 631 S.W.2d 754, 757 (Tex. Crim. App.

1978). Additionally, the applicant asserts no legal argument or authority to support his claim that TEX. PENAL CODE ANN. §6.04 is unconstitutional as applied in the instant case and/or that the term "clearly insufficient" in the statute creates a burden of proof for defendants. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997)(failure to cite authority constitutes waiver of the alleged error on appeal).

4.      Additionally, the applicant's claims are meritless. TEX. PENAL CODE § 6.04(a) does not create a burden of proof for defendants. Additionally, the instant case is readily distinguished from *Robbins v. State*, 717 S.W.2d 348 (Tex. Crim. App. 1986), because the trial court's instructions to the jury in the instant case tracked the statutory language of Section 6.04 and included language that was omitted from the charge in *Robbins.*

5.      Finally, the applicant is not entitled to relief due to his failure to demonstrate fundamental error, or error so egregious that the applicant was deprived of a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

EIGHTH GROUND: LESSER-INCLUDED OFFENSES

6.      There was no objection to the court's charge at trial on the basis that the trial court erred in not instructing the jury regarding specific lesser-included offenses; accordingly, the applicant is procedurally barred from advancing his habeas claim. *Hodge*, 631 S.W.2d at 757.

7.      Alternatively, the applicant's habeas claim is meritless because evidence at trial did not establish the applicant's proffered lesser-included offenses as valid alternatives to the charged offense. *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997).

NINTH THROUGH THIRTEENTH GROUNDS: PUNISHMENT EVIDENCE

8.      Because the applicant received a retrial on punishment, the applicant's habeas claims challenging the punishment phase of the applicant's first capital murder trial are moot and need not be considered in the instant habeas proceedings.

FOURTEENTH AND FIFTEENTH GROUNDS:  REPRESENTATION AT TRIAL

9.      The applicant fails to demonstrate deficient performance, much less harm, based on alleged deficiencies in trial counsel's representation. *Strickland v. Washington*, 466 U.S. 668 (1984).  Additionally, the applicant fails to overcome the strong presumption that trial counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Id.* at 689; *Thompson v. State*, 9 S.W.3d 808, 813-4 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

10.     Based on the totality of the representation afforded the applicant at trial, as demonstrated by counsel's vigorous defense of the applicant, the applicant's claim that he was denied effective representation at trial is without merit.   Trial counsel's representation fell within the range of reasonable professional assistance; counsel made reasonable strategy decisions during voir dire and at trial; and, counsel lodged appropriate objections to evidence and the court's guilt-innocence charge.   *See Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986)(analysis for ineffective assistance of counsel claim is undertaken in light of the "totality of the representation" rather than by examining isolated acts or omissions of trial counsel).

11.     The applicant's habeas claims of ineffectiveness urging alternative strategies do not establish the merits of the applicant's allegations.  *Strickland*, 466 U.S. at 689 (holding that there are "countless ways to provide effective assistance in any given case").

12.     Trial counsel was not ineffective for failing to object and/or preserve error regarding the State's properly admitted evidence of the applicant's violent acts involving complainant Hayslip at guilt-innocence. See *Shaw v. State*, 530 S.W.2d 838 (Tex. Crim. App. 1976)(evidence that defendant had previously hit, threatened, and shot at victim held admissible at guilt-innocence phase of murder trial); *Alford v. State*, 505 S.W.2d

36

813, 814 (Tex. Crim. App. 1974)(in murder prosecution, evidence that the defendant attempted to choke his estranged wife to death five months before he killed her ruled admissible).

13.     Trial counsel was not ineffective for failing to object and/or preserve error regarding the State's proper guilt/innocence argument. *Harris v. State*, 784 S.W.2d 5, 12 (Tex. Crim. App. 1989)(counsel can properly summarize the evidence, make reasonable inferences form the evidence, answer argument of opposing counsel, and make a plea for law enforcement during jury argument). Even assuming error, the applicant is not entitled to habeas relief because the complained-of arguments, when considered in light of the entire record, were not "extreme or manifestly improper, violative of a mandatory statute, or inject new facts into the case that [were] harmful to the defendant." *Tompkins v. State,* 774 S.W.2d 195, 218 (Tex. Crim. App. 1987).

SIXTEENTH AND SEVENTEENTH GROUNDS: APPEAL

14.     The applicant fails to show ineffective assistance of appellate counsel. *See Butler,* 884 S.W.2d at 783 (*Strickland* standard applies to appellate counsel as well as trial counsel). Appellate counsel is not obligated to raise every possible claim on direct appeal; rather, appellate counsel need only raise the claims that he believes have the best chance of success. *Smith v. Robbins,* 528 U.S. 259, 285-8 (2000).

**B-WRIT**

FIRST GROUND: LETHAL INJECTION

15.     Because the applicant failed to urge the instant claim at the trial level, the applicant's ground for relief is procedurally barred. *Hodge,* 631 S.W.2d at 757 (Tex. Crim. App. 1978).

16.     The applicant's claim concerning the constitutionality of the Texas lethal injection procedure is not cognizable in a writ proceeding. *See Ex parte Alba,* 256 S.W.3d 682, 686 (Tex. Crim. App. 2008)(dismissing defendant's art. 11.071 writ application and

37

holding that his challenge to Texas lethal injection procedure is not cognizable in habeas proceedings); *see also Ex parte Chi,* 256 S.W.3d 702 (Tex. Crim. App. 2008).

17.     Alternatively, the applicant's claim is not ripe for review because he does not currently have a scheduled execution date, and there is no assurance that Texas' lethal injection protocol will be the same when the applicant's execution does occur. *See and cf. Ex parte Barber,* 879 S.W.2d 889 (Tex. Crim. App. 1994)(holding that applicant must show that complained-of error affected fact or length of confinement in order to be cognizable on habeas).

18.     In the alternative, Texas lethal injection procedure satisfies the prohibition against cruel and unusual punishment, pursuant to U.S. CONST. amend. VIII; the applicant fails to show that the Texas lethal injection procedure violates his rights under U.S. CONST. amends. VIII and XIV and TEX. CONST. art. I, §§ 9 and 10.  *See Baze v. Rees,* 553 U.S. 35 (2008); *see also Sorto v. State,* 173 S.W.3d 469, 490 (Tex. Crim. App. 2005)(rejecting claim that defendant's Texas death sentence violated United Nations Convention Against Torture, Articles 6 and 14 of the International Covenant on Civil and Political Rights (ICCPR), and Supremacy Clause of the United States Constitution); *Raby v. Livingston,* 600 F.3d 552 (5TH Cir. 2010)(affirming federal district court's rejection of Texas death row inmate's claim, brought pursuant to 42 U.S.C. § 1983, concerning constitutionality of Texas lethal injection procedure.

SECOND THROUGH FIFTH GROUNDS:  DENIAL OF CONTINUANCE

19.     The applicant does not establish that the trial court abused its discretion in denying the defense's motions for continuance; the applicant fails to demonstrate actual prejudice. TEX. CODE CRIM. PROC. art. 29.03; *Heiselbetz v. State,* 906 S.W.2d 500 (Tex. Crim. App. 1995); *Cooks v. State,* 844 S.W.2d 697, 725 (Tex. Crim. App. 1992).

20.     Additionally, the applicant's speculative and hindsight-based assertions of counsel's alleged ineffectiveness with respect to the development and presentation of

38

mitigation evidence and cross-examination of a State's witness are meritless. *See Robertson v. State*, 187 S.W.3d 475, 481 (Tex. Crim. App. 2006)(observing that there are countless ways to provide effective assistance in any given case, and even the best criminal defense attorneys would not defend a particular client in the same way); *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979)(reviewing courts will not second-guess through hindsight the strategy of counsel at trial).

SIXTH GROUND: YOUTHFUL MISCONDUCT EVIDENCE

21.     The applicant is procedurally barred from presenting his habeas claim challenging the constitutionality of the admission of punishment evidence of his youthful misconduct, based on the failure of his trial objection not comporting with his objection on habeas. *See* Tex. R. App. P. 33.1(a); *Hodge*, 631 S.W.2d at 757; *see also Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999)(holding that defendant's failure to comply with Texas contemporaneous objection rule constituted adequate and independent state-law procedural ground sufficient to bar federal habeas); *Carmona v. State,* 941 S.W.2d 949, 953 (Tex. Crim. App. 1997)(holding that trial objection based on attorney-client privilege does not preserve error for appellate claim based on work-product doctrine).

22.     In the alternative, the admission of punishment evidence of the applicant's youthful misconduct did not violate the applicant's constitutional rights, pursuant to U.S. CONST. amend. VIII and TEX. CONST. art. I, § 13. *See Corwin v. State,* 870 S.W.2d 23, 36 (Tex. Crim. App. 1993)(rejecting capital defendant's claim that admission at punishment of his juvenile misconduct violates his rights under U.S. CONST. amend. VIII); *see also Cantu,* 939 S.W.2d at 645 (declining to interpret Texas Constitution in more expansive manner than federal constitution; noting that Court has previously found no significance in difference between Eighth Amendment's phrase "cruel and unusual" and Texas Constitution's phrase "cruel or unusual"); *Williams v. State,* 273 S.W.3d 200,

39

228 (Tex. Crim. App. 2008)(noting jury able to give mitigating effect to youth through future dangerousness special issue).

23.    The Supreme Court's prohibition, in *Roper v. Simmons,* 543 U.S. 551 (2005), of the execution of offenders under the age of eighteen at the time of the capital offenses does not extend to and prohibit the proper admission of evidence of the applicant's youthful misconduct during the punishment phase of his trial. *See* TEX. CODE CRIM. PROC. art. 37.071, § 2(a)(1)(governing the admission of any matter the trial court deems relevant to sentencing).

SEVENTH GROUND: BURDEN OF PROOF

24.    The applicant's seventh ground for relief is meritless. The trial court did not err in failing to instruct the jury that the State had the burden of proof on mitigation. *Hankins v. State,* 132 S.W.3d 380, 386 (Tex. Crim. App. 2004).

EIGHTH GROUND: BURDEN OF PROOF ON MITIGATION

25.    Because the applicant did not urge the instant ground for relief on direct appeal, the applicant's claim need not be considered in habeas. See *Ex parte Hopkins,* 610 S.W.2d 479 (Tex. Crim. App. 1980)(habeas corpus will not lie as substitute for appeal); *Ex parte Irvan,* WR-75,428-01 (Tex. Crim. App. June 8, 2011)(not cited for publication)(defendant's ground for relief complaining that his first appointed trial counsel was allowed to withdraw from representing the defendant after two years of representation deemed procedurally barred because defendant failed to urge his claim on direct appeal).

26.    The trial court properly submitted the statutory mitigation instruction to the applicant's jury so that the jury was able to give full and meaningful effect to any evidence that the jury found warranted a sentence of life, rather than death. TEX. CODE CRIM. PROC. art. 37.071.

40

NINTH, TENTH AND ELEVENTH GROUNDS: COURT'S CHARGE

27.    The trial court submitted a punishment charge consistent with TEX. CODE CRIM.

PROC. art. 37.071 which has withstood numerous constitutional challenges.  *See Sorto*

*v. State*, 173 S.W.3d 469, 492 (Tex. Crim. App. 2005)(capital murder defendant was not

entitled to have jurors informed of the effect of their failure to agree on future

dangerousness special issue); *Druery v. State*, 225 S.W.3d 491, 509 (Tex. Crim. App.

2007)(rule prohibiting the trial judge, the State, the defendant, or defense counsel from

informing the jury that a failure of the jury to agree on a special issue would result in a

life sentence rather than a death sentence upheld); *Blue v. State*, 125 S.W.3d 491, 505

(Tex. Crim. App. 2003)(claim that Article 37.071 violates various federal constitutional

provisions because it prohibits informing jurors of the effect of the failure to agree on the

special issues overruled).

28.    The denial of information to jurors regarding their individual responsibility did not

violate the principle underlying *Caldwell v. Mississippi*, 472 U.S. 320 (1985), and did not

mislead the jury regarding the consequence of their deliberations.  *Cantu v. State,* 842

S.W.2d 667 (Tex. Crim. App. 1992).

TWELFTH GROUND: EFFECTIVENESS OF APPELLATE COUNSEL

29.    Appellate counsel was not ineffective for choosing not to advance meritless

appellate claims.  *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308 (1983).  Appellate

counsel does not have a constitutional duty to raise every non-frivolous issue, and courts

cannot second-guess an appellate attorney's professional judgment to brief only

stronger points of error.  *Id.*  The applicant fails to show that, but for appellate counsel

not presenting specific claims on direct appeal, the results of the proceeding would have

been different.  *See Butler,* 884 S.W.2d at 783 (*Strickland* standard applies to appellate

counsel as well as trial counsel).

41

THIRTEENTH AND FOURTEENTH GROUNDS: INCORPORATION OF PRIOR GROUNDS

30.     The applicant's thirteenth and fourteenth grounds for relief are meritless.  Other than the basis for which the applicant was granted a retrial on punishment, the applicant fails to establish error in the instant conviction and sentence.

31.     The applicant fails to demonstrate that his conviction was unlawfully obtained. Accordingly, it is recommended to the Texas Court of Criminal Appeals that relief be denied.

42

Cause Number 782657-A & B

EX PARTE                                    §          IN THE 262ND DISTRICT COURT

                                            §          OF

CHARLES VICTOR THOMPSON,                    §          HARRIS COUNTY, TEXAS
        Applicant

## ORDER

THE CLERK IS HEREBY **ORDERED** to prepare a transcript of all papers in cause

numbers 782657-A & B and transmit same to the Court of Criminal Appeals, as provided by

Article 11.071 of the Texas Code of Criminal Procedure.  The transcript shall include

certified copies of the following documents:

1.  all of the applicant's pleadings filed in cause numbers 782657-A & B, including any exhibits and affidavits;

2.  all of the Respondent's pleadings filed in cause numbers 782657-A & B, including exhibits and affidavits;

3.  this court's findings of fact, conclusions of law and order denying relief in cause numbers 782657-A & B;

4.  the Proposed Findings of Fact and Conclusions of Law submitted by Respondent in cause numbers 782657-A & B;

5.  any Proposed Findings of Fact and Conclusions of Law submitted by the applicant in cause numbers 782657-A & B;

6.  the 2012 affidavit of Ellis McCullough; and

7.  the indictment, judgment, sentence, docket sheet, and appellate record in cause number 782657, unless they have been previously forwarded to the Court of Criminal Appeals.

THE CLERK IS FURTHER **ORDERED** to send a copy of the court's findings of fact

and conclusions of law, including its order, to applicant's counsel: Danny Easterling; 1018

Preston, 6th Floor; Houston, Texas  77002 and to Respondent:  Lynn Hardaway; Harris

County District Attorney's Office; 1201 Franklin; Suite 600; Houston, Texas 77002-1901.

43

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE STATE'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CAUSE NOS.
782657-A & B.

SIGNED this _22_ day of _February_____, 2013.

_____
Presiding Judge
262nd District Court

44