IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES VICTOR THOMPSON, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civ. No. 4:13-CV-1900 |
| | § | (Death Penalty Case) |
| ERIC GUERRERO, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| *Respondent*. | § | |

**RESPONDENT'S SUPPLEMENT TO MOTION TO STRIKE AND
OPPOSITION TO PETITIONER'S MOTION TO FILE PROPOSED
BUDGET EX PARTE AND UNDER SEAL**

Federal habeas petitioner Charles Thompson is scheduled to be executed after **6:00 p.m. on January 28, 2026**. Thompson's federal habeas proceedings concluded in this Court almost nine years ago. ECF No. 71. He has now filed under seal a motion for leave to file a "budget" ex parte. ECF No. 109 (Mot.). As Thompson explained in his notice to the Court, the motion for leave was not served on Respondent (the Director) at the time it was filed, but it was served on December 2, 2025, ECF No. 111, after the Director moved to strike Thompson's motion for leave because it was filed under seal and ex parte, ECF No. 110. Although the motion for leave has now been served on the Director, the motion remains deficient because it has not been filed publicly. *See* ECF No. 110 at 3–4. For the reasons discussed in the Director's Motion to Strike, *id.*

at 7–8, Thompson's sealed motion for leave should be stricken, and he should

be ordered to refile it on the public docket. Moreover, as discussed below,

Thompson's motion for leave fails to make a proper showing of the need for

confidentiality and it should, therefore, be denied. Lastly, Thompson's request

for funding should be denied because he fails to demonstrate the requested

funding is reasonably necessary.

## I.    Thompson's Motion for Leave Fails to Make a Proper Showing of the Need for Confidentiality.

The Director's Motion to Strike explained the reasons Thompson's filing

his motion for leave ex parte and under seal was improper. ECF No. 110. As

the Director has now been served with the motion for leave, the Director

provides the following response to the arguments Thompson proffered therein.

As a threshold matter, the Director's Motion to Strike explained the

standard that should be applied to Thompson's request to proceed with his

funding request ex parte. ECF No. 110 at 2–6. Thompson's motion for leave

argues a lower standard should apply. Mot. at 5–14. In doing so, Thompson

points to several cases he believes establish some ambiguity regarding the

process petitioners must follow to make the proper showing concerning the

need for confidentiality. Mot. 6 n.7. But none of the orders he cites are

published opinions, and he otherwise relies mostly on his speculation that,

because some of the motions were sealed, they were also "presumably ex parte." *Id.*

In any event, Thompson expressly declines to support his need for confidentiality with any facts, claiming there is a "policy preference" for defense requests for ancillary services to be made ex parte. Mot. 2–5. Thompson claims it is "impossible" for him to make the required showing without disclosing his litigation strategy, privileged communications, and confidential attorney work product. *Id.* at 2. And rather than make the required "case-specific statement of the need for confidentiality," *Graves v. Johnson*, 101 F. Supp. 2d 496, 499 (S.D. Tex. 2000), he asks this Court to rely on the sealed, ex parte proposed budget as the factual basis of his need for confidentiality, *id.* at 6–7. But while Thompson is correct that case budgets filed under the Criminal Justice Act (CJA) should be filed ex parte and under seal, *see id.* at 3 n.2 (quoting CJA Guidelines § 640.20(b)), a proposed budget is *not* the same thing as a request that the Court authorize or grant him the requested expert services, and it does not obviate the need for a motion for expert services under § 3599. Indeed, the CJA guidelines, like § 3599(f), expressly prohibit ex parte requests for investigative and expert funding unless "a proper showing is made . . . concerning the need for confidentiality." *See* CJA Guidelines § 660.10.10(b). Thompson's workaround of the ex parte

prohibition by filing an ex parte proposed budget is not sufficient to make the required on-the-record showing.

Likely recognizing that, Thompson alternatively claims to "make[] out an abbreviated non-confidential showing." Mot. 6–7. The abbreviated showing, however, includes nothing more than a reference to a mitigation investigation and potential claims of prosecutorial misconduct and "factual innocence of the death penalty." *Id.* at 15. This showing is so abbreviated it is difficult to parse it, as it does nothing more than rephrase, even more generically, the confidentiality standards to, ipso facto, suggest the need for confidentiality. As the Director has noted, sweeping assertions of confidentiality are nothing more than the typical, broad assertion of attorney-client and work-product privilege present in all cases, *see Patrick v. Johnson*, 37 F. Supp. 2d 815, 816 (N.D. Tex. 1999) (denying petitioner's motion where he asserted "only a generic need for confidentiality which arises in virtually all capital cases"), and they fall far short of making the proper showing. Thompson has identified nothing "case-specific," not even the "type of services" needed nor the broad issues or topics to which the services relate. *See Graves,* 101 F. Supp. 2d at 499.

As discussed in the Director's Motion to Strike, district courts in Texas have denied requests more specific than Thompson's. ECF No. 110 at 3–4. In *Robertson*, for example, the petitioner sought a mitigation investigator and a mitigation expert to pursue an ineffective-assistance-of-trial-counsel (IATC)

claim. *Robertson v. Stephens*, No. 3:13-CV-0728-G, 2013 WL 2658441, at *1 (N.D. Tex. June 13, 2013). Confidentiality was required, according to the petitioner, to protect "'prior and proposed work product' or 'privileged information.'" *Id.* But the assertion of confidentiality was inadequate because, for instance, the prior attorney's work would not be protected in light of the privilege waiver attendant to ineffective-assistance claims. *Id.* at *3 ("Since all of prior counsel's relevant communications and attorney work product would seem to be laid bare in reviewing their representation, it is not clear what portion of the prior mitigation investigation would remain confidential."). Similarly, the lack of specificity as to the investigation desired by the petitioner deprived the Director "of a meaningful opportunity to provide information necessary for this court to make a proper determination of this important funding matter." *Id.* at *4. The request to proceed ex parte was thus denied. *Id.* at *5.

Notably this Court relied on *Robertson* to deny Thompson's request in 2014 to conduct funding proceedings ex parte, ECF No. 13 at 2–3 ("Thompson's cursory briefing does not provide any reason for confidentiality beyond those that exist in every capital case."), and his current request to proceed ex parte is as unjustified as his previous one. Indeed, the timing of Thompson's belated funding request—coming a decade after his first funding request and only weeks before his scheduled execution—also means his interest in

5

confidentiality is meaningfully less than it was during the initial federal habeas process. *See Edwards v. Davis*, No. 3:10-CV-6-M, 2017 WL 76954, at *3 (N.D. Tex. Jan. 5, 2017) ("It is hard to imagine how the disclosure of expert information regarding the forensic evidence of the crime less than a month before a scheduled execution can be considered 'premature.'").

Thompson's present motion for leave provides even less of a showing of the need for confidentiality than the petitioner in *Robertson* did. The vagueness of his showing prevents full, informed consideration of the funding request, especially since there are no currently pending proceedings in Thompson's case. Aside from a cursory reference to a clemency petition, Mot. 15, there is meager information—and no adversarial testing—upon which this Court can assess the need for funding, particularly given the substantial procedural barriers, such as successiveness, that might stand in Thompson's way at this late juncture. *See Ayestas v. Davis*, 584 U.S. 28, 46 (2018). Thompson's request to proceed ex parte should be denied.

## II.    Thompson Has Failed to Demonstrate the Requested Funds Are Reasonably Necessary.

This Court "may authorize [and] order the payment of fees and expenses" for expert assistance if the service is "reasonably necessary for the representation of the" petitioner. 18 U.S.C. § 3599(f). "[D]istrict courts have broad discretion in assessing requests for funding." *Ayestas*, 584 U.S. at 46.

Indeed, there "may even be cases in which it would be within a court's discretion to deny funds after a finding of reasonable necessity." *Id.* at 47 (quotation marks omitted). Thus, the "reasonably necessary" standard requires courts to consider the potential merit of the claim, the likelihood of developing useful and admissible evidence, and the likelihood of clearing procedural hurdles. *Id.* at 46–47. "[I]t would not be reasonable—in fact, it would be quite unreasonable—to think that services are necessary to the applicant's representation if, realistically speaking, they stand little hope of helping him win relief." *Id.* at 46. And "§ 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone." *Id.* at 47. Moreover, if a petitioner is asking for more than the $7,500 presumptive cap on funds, he or she must also prove that they were "for services of an unusual character or duration."[1] § 3599(g)(2).

Where a petitioner requests funding to support a clemency petition, he "must show that the requested services are reasonably necessary to provide the Governor and Board of Pardons and Paroles the information they need in order to determine whether to exercise their discretion to extend grace to the

---

[1]   Thompson does not specify in his motion how much money he is requesting. *See generally* Mot. Thus, the Director cannot assess whether Thompson has made this additional showing for above-the-cap funds. But if Thompson has asked for more than $7,500, his motion fails to in any way allege, much less prove, the requisite showing. 18 U.S.C. § 3599(g)(2).

petitioner in order to prevent a miscarriage of justice." *Wilkins v. Davis*, 832 F.3d 547, 552 (5th Cir. 2016) (quoting *Brown v. Stephens*, 762 F.3d 454, 460 (5th Cir. 2014), *abrogated on other grounds by Ayestas*, 584 U.S. at 45). If the proposed investigation would only supplement evidence that has already been considered in the judicial proceedings, a court does not abuse its discretion in denying the funding request. *Id.*

Notably, Thompson requested funding from this Court more than a decade ago to obtain services of a pathologist and a mitigation expert. ECF Nos. 14, 15. Thompson argued the assistance of a pathologist was necessary to raise a claim that he is "actually innocent of capital murder" because he was not criminally responsible for Dennise Hayslip's death due to "a botched surgery" that was performed after Thompson shot her in the face. ECF No. 14 at 1–2. He argued the assistance of a mitigation expert was necessary to raise a claim alleging trial counsel and state habeas counsel ineffectively investigated available mitigating evidence. ECF No. 15 at 1. This Court denied Thompson's request for funding, finding that assistance of a pathologist was not reasonably necessary because habeas counsel understood the forensic issues without expert assistance, and Thompson did not provide enough information regarding the adjudication of his ineffectiveness claim in state court and did not adequately explain the uninvestigated mitigating evidence for the Court to assess his funding request. ECF No. 24 at 3–6. It does not

8

appear that Thompson re-urged the funding request or appealed this Court's ruling.

Now, eleven years later, Thompson suggests he needs funding to conduct a clemency investigation, to conduct another mitigation investigation (presumably to support a claim of ineffective assistance of trial counsel), to investigate claims of prosecutorial misconduct, and to show he is factually innocent of the death penalty. Mot. 15. But he is not entitled to funding to investigate any of those avenues.

First, Thompson fails to justify funding for a clemency investigation. His "abbreviated showing," Mot. 15, regarding the need for funding to prepare a clemency petition does not suggest any viable path to clemency. Most importantly, Thompson presented a thorough case in mitigation at his second punishment trial. *See* ECF No. 66 at 10–14 (the Director's answer quoting the state habeas record). In short, Thompson's father and brothers testified regarding Thompson's difficulties in school, his early drug use, the father's overly strict discipline, and the bad influence on Thompson of his older brother. *See id.* at 10–11. A physician testified that Thompson suffers from substance dependence, which was in remission at the time of trial due to his incarceration. *See id.* at 13. Thompson's ex-wife and others also testified about his substance abuse. *See id.* at 11–12. Several witnesses testified about Thompson's demeanor after the murders, including his remorse. *See id.* at 12–

13. Perhaps most importantly, neuropsychologist Dr. Daneen Milam testified that Thompson was very bright, but her evaluation indicated Thompson has mild and diffuse brain damage, which affected his ability to assess cause and effect.[2] *Id.* at 13. Dr. Milam testified that Thompson had significant learning disabilities as a child, but he did not receive the help he needed. *Id.*

Thompson is not entitled to funding at this late juncture to plow the same ground. *See Ochoa v. Davis*, 750 F. App'x 365, 373 (5th Cir. 2018) (denying funding under *Ayestas* because the evidence the petitioner sought to investigate would be cumulative of what was already presented, and the petitioner did not explain how it would be different from what was available at the time of his trial). This is particularly true given the aggravating facts of Thompson's case, including evidence of his physical abuse of Dennise Hayslip that preceded Thompson's murder of her and Darren Cain. *See Thompson v. State*, 93 S.W.3d 16, 18–19 (2001). Additionally, during his incarceration, Thompson associated with the Aryan Brotherhood gang, tried to persuade prosecution witness Diane Zernia to lie, and attempted to hire someone to kill Zernia. *See Thompson v. State*, No. AP-73,431, 2007 WL 3208755, at *1 (Tex.

---

[2]     Dr. Milam testified that she spent nine or ten hours administering tests to Thompson, and she reviewed his school records, juvenile court records, probation records, past psychological evaluations, records of Thompson's suicide attempt, and data gathered by the defense's mitigation specialist. 19 RR 41–43, 58–59. Dr. Milam administered the Halstead-Reitan neuropsychological battery. 19 RR 48.

Crim. App. Oct. 31, 2007). After he was sentenced to death following his punishment retrial, Thompson escaped from jail and fled to Louisiana.[3] Considering these facts, it is entirely unlikely any new investigation would result in a viable plea for clemency, and Thompson's request for funding should be denied. *See Crutsinger v. Davis*, 898 F.3d 584, 586–87 (5th Cir. 2018) (explaining that clemency cannot be used as an "end-run" around the requirement to demonstrate "utility" of further investigation, and upholding denial of funding where petitioner sought $500 for DNA evidence review but failed to "explain how further review and DNA testing could conceivably support claims for relief or a case for clemency"); *Wilkins*, 832 F.3d at 552.

Second, Thompson is not entitled to § 3599(f) funding to investigate and prepare a subsequent state habeas application. The Fifth Circuit has held that "successive state habeas proceedings" are "outside the scope of counsel's federal appointment pursuant to § 3599." *Storey v. Lumpkin*, 8 F.4th 382, 393 (5th Cir. 2021); *see Harbison v. Bell*, 556 U.S. 180, 189 (2009) (explaining that state habeas proceedings are not "subsequent" to federal habeas); *cf. Gary v. Warden, Georgia Diagnostic Prison*, 686 F.3d 1261, 1275 (11th Cir. 2012) (denying funds for a DNA expert to assist the petitioner in moving the state court for DNA testing because DNA testing is not a subsequent proceeding

---

[3]    Death Row Escapee Caught, https://www.cbsnews.com/news/death-row-escapee-caught/ (last visited December 3, 2025).

contemplated by § 3599). Consequently, to the extent Thompson seeks funding to investigate new habeas claims to raise in a subsequent state habeas application,[4] he is not entitled to federal funding for that purpose. *See Storey*, 8 F.4th at 393.

Third, Thompson is not entitled to funding to investigate claims for the purpose of a successive federal habeas petition. This is particularly true because Thompson provides no reason to think any further investigation into potential IATC or prosecutorial-misconduct claims would be anything but a fishing expedition. *See Jones v. Davis*, 927 F.3d 365, 373–74 (5th Cir. 2019). Indeed, as discussed above, trial counsel presented a thorough mitigation case, and Thompson extensively litigated claims of prosecutorial misconduct in his prior habeas proceedings. *See Thompson v. Davis*, 941 F.3d 813, 816 (5th Cir. 2019) (discussing Thompson's claims alleging the prosecution suppressed favorable evidence and used a State agent to elicit incriminating statements). Thompson gives no reason to conclude funding would help him uncover any viable but previously undiscovered claim.

Thompson also fails to articulate how any new IATC or prosecutorial-misconduct claim could be considered in light of AEDPA's successiveness bar,

---

[4]     For example, Thompson's curt reference to his "factual innocence of the death penalty," Mot. 15, may indicate an intent to seek permission in state court to file a subsequent habeas application pursuant to Texas Code of Criminal Procedure article 11.071 § 5(a)(3).

28 U.S.C. § 2244(b).[5] That bar limits this Court's authority to grant funding to investigate successive claims. *Edwards*, 2017 WL 76954, at *3 ("Because this Court is without jurisdiction to conduct successive habeas proceedings without authorization from a three-judge panel of the United States Court of Appeals for the Fifth Circuit under 28 U.S.C. § 2244(b)(3)(B), it is not clear that this Court has jurisdiction to authorize funding for expert or investigative services in such proceedings without circuit approval.").

Any new claim would also likely be unexhausted, and Thompson does not even suggest funding could help him establish cause and prejudice to avoid any resultant procedural default. *See Ayestas*, 584 U.S. at 46–47 (a court should consider whether the petitioner "will be able to clear any procedural hurdles standing in the way"). Similarly, Thompson fails to show that any new evidence could be considered under either *Cullen v. Pinholster*, 563 U.S. 170

---

[5]   For instance, an IATC or prosecutorial-misconduct claim relating to Thompson's punishment retrial or his purported innocence of the death penalty necessarily could not satisfy § 2244(b)(2)(B)(ii), and he does not even purport to be able to show that any new claim would be considered newly available under § 2244(b)(2)(B)(i). Notably, Thompson raised several claims in his third state habeas application alleging the prosecution suppressed evidence and improperly elicited incriminating evidence in violation of his right to counsel, and that application was dismissed as an abuse of the writ. *Ex parte Thompson*, No. 78,135-03, 2016 WL 922131, at *1 (Tex. Crim. App. Mar. 9, 2016). The state court's implicit findings regarding the prior availability of Thompson's claims are presumptively correct. *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018). Thompson could not now, a decade later, demonstrate any new claim was previously unavailable.

(2011), or 28 U.S.C. § 2254(e)(2) in connection to new habeas claims.[6] He is not entitled to funding at this stage to search for unusable evidence. *See Ayestas*, 584 U.S. at 47.

Moreover, claims of actual innocence are not cognizable in federal habeas, so Thompson is not entitled to funding to investigate his purported "factual innocence of the death penalty," Mot. 15. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993). Notably, Thompson extensively and unsuccessfully litigated claims alleging he was innocent of capital murder because, although he killed Cain, he either did not intend to kill Hayslip or Hayslip's death was caused by the medical care she received after he shot her. *E.g., Thompson v. Davis*, No. H-13-1900, 2017 WL 1092309, at *26 (S.D. Tex. Mar. 23, 2017); *Thompson v. State*, 93 S.W.3d at 20–22. In any event, any argument that Thompson is actually innocent of capital murder or the death penalty would be plainly meritless in light of the evidence that he killed Cain and then shot Hayslip in the face, later telling Diane Zernia that he told Hayslip, "I can shoot you too, bitch," when he shot her. *Thompson v. State*, 93 S.W.3d at 19–20. Thompson simply cannot justify funding at this juncture to plow the same ground he has before to find meritless claims. *See Ayestas*, 584 U.S at 47.

---

[6]     *See Shinn v. Martinez Ramirez*, 596 U.S. 366, 382 (2022) ("We now hold that, under § 2254(e)(2), a federal court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of postconviction counsel.").

## CONCLUSION

The Director respectfully requests that the Court strike Thompson's

sealed motion for leave and deny his request for funding.

<div style="margin-left:40%">

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

s/ Jay Clendenin
JAY CLENDENIN
Assistant Attorney General
*Counsel of Record*
State Bar No. 24059589
Southern District Admission No. 920324

Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 936-1400

*Counsel for Respondent*

</div>

**CERTIFICATE OF SERVICE**

      I do hereby certify that on December 3, 2025, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Eric Allen
The Law Office of Eric J. Allen LTD
4200 Regent St., Suite 200
Columbus, OH 43219
eric@eallenlaw.com

Gregory Gardner
Law Office of Gregory Gardner, PLLC
P.O. Box 2366
Boulder, CO 80306
gardnerlegal@gmail.com

                                      s/ Jay Clendenin
                                      JAY CLENDENIN
                                      Assistant Attorney General