IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Charles Victor Thompson,** | § | Civil Action No. 13-cv-1900 |
| | § | **THIS IS A CAPITAL CASE** |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | |
| **Eric Guerrero,** | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent, | § | |

**SUPPLEMENT[1] IN SUPPORT OF MOTION TO FILE PROPOSED BUDGET, INCLUDING FUNDS FOR ANCILLARY SERVICES PURSUANT TO 18 U.S.C. § 3599(f),**
*EX PARTE* **AND UNDER SEAL**

Charles Thompson hereby files this supplemental briefing in support of his Motion to File Proposed Budget, Including Funds for Ancillary Services Pursuant to 18 U.S.C. § 3599(f), *ex parte* and under seal. Doc. 109. This supplemental briefing is offered to show the need for confidentiality regarding his request for clemency funding. In addition, Mr. Thompson respectfully requests that the Motion, filed *ex parte* and under seal on November 26, be unsealed and made available on the public

---

[1] Counsel did not conference with the counsel for respondent regarding the supplement. However, Petitioner would reiterate that Respondent was opposed to the original motion.

1

docket. He respectfully requests that the budget attachment, which was also filed *ex parte* and under seal on November 26, remains sealed contingent upon this Court's ruling on the associated motion for leave to file *ex parte* and under seal. The attachment has not been served on opposing counsel and should not be posted publicly. Should this Court deny Mr. Thompson's Motion, counsel withdraws the attachment.

**Further Argument in Support of Confidentiality**

On November 26, 2025, through counsel, Charles Thompson filed a Motion to File Proposed Budget, Including Funds for Ancillary Services Pursuant to 18 U.S.C. § 3599(f) and a related *Ex Parte* and Under-Seal Attachment to the Motion. Both documents were filed under seal. Although a Certificate of Service stated that counsel had served a copy of the Motion (without the attachment) on Respondent, undersigned counsel later filed a Notice and Amended Certificate of Service stating that the Motion (but not the attachment) actually was served on Respondent on December 2. On December 5, 2025, this Court granted a Motion by Respondent to Strike the Motion for Leave to File *Ex Parte* and Under Seal, based upon a finding that Thompson had not made the required showing of a need for confidentiality on the record.

Through counsel, Mr. Thompson hereby supplements his request for leave to file his proposed case budget *ex parte* and under seal, including funding for provider services under 18 U.S.C. § 3599(f), with the following case-specific showing:

**I.     Type of Services Needed: Mental Health Experts (2) and Mitigation Specialists**

Thompson's proposed budget includes a request for two mental health experts and mitigation specialists.

a. *Issue or Topic for Which Funds are Necessary*: To investigate Mr. Thompson's background, family history, psycho-social history, and other aspects of his life that could provide a basis for a grant of clemency.

b. *Risk of Harm from Early Disclosure*: Counsel may decide *not* to include information that surfaces during this investigation. Some of the information may be averse to Mr. Thompson's plea for mercy; if that is the case, Mr. Thompson will suffer harm because of the forced early disclosure of nature and details of the mitigation investigation into his life history and family background. Mr. Thompson also seeks funding for two mental health experts to facilitate the inquiry into his mental health history and psychiatric condition, including an intergenerational history of substance abuse and trauma. Mr. Thompson asserts the need to keep confidential the identity of these experts and the scope of their examinations for the same reason—early disclosure to the State of these details would jeopardize Mr. Thompson's clemency application by perhaps allowing the State to urge the members of the Board of Pardons and Paroles to draw adverse inferences in the event that Mr. Thompson chooses not to present the opinions of these experts and the results of their examinations.

    c. Information of the type uncovered by mental health experts and mitigation specialists is essential to a fair assessment of the appropriateness of a grant of clemency; although some of this evidence was investigated prior to Mr. Thompson's trials, there is reason to believe there is more evidence that a thorough investigation would uncover relevant to clemency. This request is not duplicative of earlier requests; federal habeas counsel requested funding for a mitigation specialist, but their request was denied.

    d. For the reasons explained above in section (b), Mr. Thompson respectfully asserts a need to file the budget *ex parte* and under seal so that he may keep confidential the identities, rates, and amount of hours requested, and further details of the work to be performed by experts and mitigation specialists.

**II. Type of Services Needed: Fact Investigator** Mr. Thompson's proposed budget includes a request for the services of a licensed private investigator who will investigate the Harris County District Attorney's Office's affiliation with and use of jailhouse informants, including in Mr. Thompson's first and second capital trials.

    a. *Issue or Topic for Which Funds are Necessary*: Prosecutorial Misconduct, Including *Brady* Violations; Underlying Innocence of the Death Penalty; Future Danger. The proposed investigation may yield information relevant to the conduct of the District Attorney's Office in

4

Mr. Thompson's case and to the veracity of jailhouse informant testimony used to prove future danger at both of his trials. This information is critical to the preparation of a clemency application in Mr. Thompson's case, because it bears on his factual innocence of the death penalty—a crucial issue in clemency—and because it goes directly to the issue of future danger, one of two factors Texas jurors' use to distinguish between criminal defendants who are deserving of the death penalty and those who are deserving of life without the possibility of parole. This is the same distinction the Board of Pardons and Paroles will consider if asked to commute Mr. Thompson's sentence from death to life without the possibility of parole.

b. *Risk of Harm from Early Disclosure*: Mr. Thompson should not be required to disclose the details of the investigation he intends to pursue into government misconduct in his case and the use of jailhouse informants, both in his case and in other instances in which the HCDAO used snitch testimony that was later called into question to obtain death sentences. The State, which undoubtedly has access to greater resources than Mr. Thompson, who is indigent, could preempt much of Thompson's investigation by approaching witnesses and potentially undermining in other ways the efforts of Mr. Thompson's ancillary service providers. In addition to the obvious resource disparities, it also would be unfair to allow the State to preempt Mr. Thompson's investigation into State

5

    misconduct, including *Brady* violations, by preventing Mr. Thompson from accessing the resources he requires, as an indigent incarcerated defendant, to investigate misconduct. Further, new disclosures and information about the HCDAO and its use of jailhouse informants have come to light in the years since Mr. Thompson's appeals. This new information is critical to clemency because it bears directly on the practices of various State actors involved in Mr. Thompson's prosecution and conviction and may undermine the veracity of evidence that was presented at his trials to prove future dangerousness and secure a death sentence.

c.  The requested investigative resources are not duplicative or cumulative; although prior investigation yielded information about government misconduct that informed the CCA's decision to grant Mr. Thompson a punishment retrial and was also the subject of federal habeas litigation, the need for continued investigation is demonstrated by revelations of State misconduct in other cases, some of which has come to light in the years since the state and federal courts last considered Mr. Thompson's appeals. *See*, *e.g.*, *Prible v. Davis,* No. 09-CV-1896, 2020 WL 2563544, at *33 (S.D. Tx. May 20, 2020), vacated by *Prible v. Lumpkin*, 43 F.4th 501 95th Cir. 2022 (reversing district court's determination that Prible could overcome default of relevant *Brady* claim based on cause and prejudice

but not disturbing conclusions regarding underlying factual basis of claim).

III. **Type of Services Needed**: Mr. Thompson seeks the services of a pathologist (MD) to investigate issues related to victim Dennise Hayslip's, cause of death, as well as potential Confrontation Clause violations that occurred at both of Thompson's trials when medical examiners who did not perform the autopsy on Ms. Hayslip testified about her cause of death.

   a. *Issue or Topic for Which Funds are Necessary*: Investigation into Factual Innocence of the Death Penalty and Moral Culpability for the Crime, pertinent to an argument for mercy and for a request for executive clemency.

   b. *Risk of Harm from Early Disclosure*: As with the prior experts (two mental experts, *see* section I, above), Mr. Thompson should not be required to disclose the identity, rate, number of hours, and details of the work to be performed by the requested expert. In the event the expert's conclusions are adverse to Mr. Thompson's appeal for clemency, the State could urge the Board of Pardons and Paroles to draw negative inferences if too much detail about the requested ancillary services was publicly available prior to the filing of the clemency application.

   c. The requested expert services are not cumulative or duplicative; no federal court has ever authorized funding for a pathologist in Mr. Thompson's case, and this Court denied predecessor counsel's request

7

for funding for a pathologist. Doc. 24. But, the range of issues counsel must explore to prepare a clemency application is broader than the scope of legal issues appropriate for federal habeas review, so the Court should authorize the funding now.

IV. **Type of Services Needed: Defense-Initiated Victim Outreach**

a. *Issue or Topic for Which the Services are Necessary*: Argument for Mercy in Clemency

b. *Risk of Harm from Early Disclosure:* For all the reasons explained in Sections I-III, above, Mr. Thompson asserts the need to keep the identity of the Defense-Initiated Victim Outreach specialist confidential, as well as the details regarding the outreach. The State may attempt to interfere with the attempted outreach by the specialist; while in this case, the State may have contact with some victim's family members, it is appropriate and necessary for the Court to authorize funding for Mr. Thompson to seek the assistance of a specialist, one who knows by training and experience how to approach and build relationships with survivors, with appropriate respect for their plight, suffering and fears. Such a specialist is tasked with the goal of serving as a bridge between the defense and the survivors, so that the survivors' needs can be considered, addressed, and, if possible, met. Early disclosure of the details of this funding request would allow the State to stymie or

8

interfere with these efforts, and Mr. Thompson would suffer harm as a result.

Respectfully submitted,

**s/ Eric Allen**

ERIC J ALLEN      (0073384)
The Law Office of Eric J Allen, LTD
4200 Regent, Suite 200
Columbus, Ohio 43219
Tele No. 614.443.4840
Fax No. 614.573.2924
Email:eric@eallenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 8th, 2025, a copy of the foregoing was served upon the Counsel for the Respondent, Jay Clendenin, by electronic mail and by function of the court's electronic filing system.

**s/ Eric Allen**

ERIC J ALLEN      (0073384)