IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Charles Victor Thompson, | § § | |
| Petitioner, | § § | |
| v. | § § | Civil Action No. No. 13-cv-1900 |
| Eric Guerrero, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | CAPITAL CASE |
| Respondent. | § § | |

**REPLY IN SUPPORT OF MOTION TO FILE PROPOSED BUDGET, INCLUDING FUNDS FOR ANCILLARY SERVICES PURSUANT TO 18 U.S.C. § 3599(F), *EX PARTE* AND UNDER SEAL**

Applicant Charles Thompson hereby files this reply in support of his Motion to File Proposed Budget, Including Funds for Ancillary Services Pursuant to 18 U.S.C. § 3599(f), *Ex Parte* and Under Seal, previously filed under seal on November 26, 2025, and re-filed publicly on December 10, 2025. Mr. Thompson also filed a supplemental brief on the need for confidentiality on December 8, 2025. **Undersigned counsel has conferred with Margaret Alverson, the CJA Case Budgeting Attorney for the Fifth Circuit, and she has reviewed his proposed budget.**

When Mr. Thompson filed his Motion to File Proposed Budget, Including Funds for Ancillary Services Pursuant to 18 U.S.C. § 3599(f), Ex Parte and Under Seal, counsel attached a proposed case budget, under *ex parte* and under-seal cover,

contingent upon this Court's ruling on the Motion. This attachment has not been served on opposing counsel and **should not be posted publicly**. Should this Court deny the Motion to File Proposed Budget, Including Funds for Ancillary Services Pursuant to 18 U.S.C. § 3599(f), counsel withdraws the *ex parte* attachment. Mr. Thompson filed a supplemental statement on the need for confidentiality regarding his proposed clemency budget. He hereby offers the following additional support for his Motion:

Through counsel, Mr. Thompson has disclosed in the proposed budget privileged communications from the client and counsel's strategic thought processes in identifying people and topics as targets of his investigation. These matters may not be reflected in the clemency application, and Thompson should not be forced to disclose them now to satisfy the showing of the need to proceed *ex parte*. For example, counsel may decide **not** to include information that surfaces during his investigation. Some of the information may be averse to Mr. Thompson's plea for mercy, and he may choose not to include it in the clemency application; but, if denied leave to proceed *ex parte*, Thompson will have advised the State that counsel is investigating these issues. The State may then follow that trail to dig up adverse information or seek an adverse inference from the fact that counsel investigated an area but did not present the results of his investigation.

Relatedly, the State, with its far greater resources, may preempt counsel's investigation by speaking to witnesses before the defense has a chance to begin its own investigation, thereby chilling or outstripping the defense's investigation. Thus, Mr.

Thompson will suffer harm because of the forced early disclosure of the additional details of the mitigation investigation and Mr. Thompson's own privileged statements.

In the budget application, counsel have disclosed privileged communications from Mr. Thompson and counsel's work product in identifying why such funding is necessary. Disclosure of this material would prejudice Mr. Thompson unfairly. One very familiar form of impeachment of a party's case is to point out that they had a well-known expert perform testing and did not present the results of such testing. Of course, this prejudice does not exist for a wealthier prisoner, who does not need to seek a court order to fund the investigation necessary to support a competent clemency application. To the extent the State has a legitimate interest in being heard, the pleadings that have been filed publicly provide sufficient information for the State to have formulated its response.

Investigation of state misconduct reflecting on the reliability of Mr. Thompson's trials is a core matter for a clemency application. Greater detail regarding the areas of misconduct and the justification for the investigation is contained in the sealed portion of the budget application. Mr. Thompson should not be required to disclose to the State the strategy of its investigation into State misconduct; the details of such justifications are a matter for the Court and contained within the sealed portion of the application. As described in the sealed portion of the budget application, the investigation is required because new and relevant information pointing to misconduct was not previously available and did not inform prior investigations. Mr.

Thompson must be able to conduct his own investigation into areas foundational to clemency, without arming the State with the tools to preempt that investigation.

## Time is Of the Essence

Mr. Thompson respectfully requests that this Court promptly approve this budget and forward it to the Chief Circuit Judge for final approval. Mr. Thompson's clemency application must be delivered to the Board of Pardons and Paroles by January 7, 2026. His execution is set for January 28, 2026. Undersigned counsel has moved expeditiously since his appointment under 18 U.S.C. § 3599 on September 9, 2025, to determine what resources were necessary to prepare a competent clemency application on Mr. Thompson's behalf. Counsel were appointed during a substantial funding shortfall within the Federal Judiciary's Defender Services program, and payments to counsel appointed pursuant to the Criminal Justice Act (CJA), as well as all defense services, were suspended at that time and not expected to resume until October 1, 2025.[1] Shortly after the resumption of CJA payments, the federal government shutdown resulted in a second stoppage of payments to CJA-appointed counsel, including payments to ancillary service providers such as those requested here. The federal government shutdown ended on Thursday, November 13, 2025. Through counsel, Mr. Thompson filed his motion for leave to file his proposed budget *ex parte*

---

[1] On July 15, 2025, the United States Courts publicly confirmed that CJA panel attorney payments, and by extension, all defense expert services, have been suspended nationwide as of July 3, 2025, and were not expected to commence until at least October 1, 2025. U.S. Courts, *Funding Crisis Leaves Defense Lawyers Working Without Pay,* U.S. Courts (July 15, 2025), https://www.uscourts.gov/data-news/judiciary-news/2025/07/15/funding-crisis-leaves-defense-lawyers-working-without-pay.

and under seal on November 26, 2025, after undertaking the recommended consultation with the CJA case budgeting attorney for the Fifth Circuit. None of the obstacles that impeded counsel's ability to engage experts and other service providers (due to the funding crisis and the federal government shutdown) would have affected Mr. Thompson's ability to engage experts and investigative services if he were not indigent.

Respectfully submitted,

**s/ Eric Allen**

ERIC J ALLEN        (0073384)
The Law Office of Eric J Allen,
LTD 4200 Regent, Suite 200
Columbus, Ohio 43219
Tele No. 614.443.4840
 Fax No. 614.573.2924
Email:eric@eallenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December 2025, I electronically filed the foregoing Reply using the CM/ECF system, which will send such filing to all counsel of record.

s/ Eric Allen

Eric J. Allen